UNITED OKLAHOMA BANK, a State
Banking Corp., Plaintiff,

v.

Ted MOSS, an individual; Ted Moss
d/b/a Moss–Lawson Industries; Exline
Gas Systems; Peggy L. Moss, an indi-
vidual, Midco Drilling, a Kansas corp.;
Schlumberger Well Services, a division
of Schlumberger Technology Corp., a
Texas corp.; Haines Pipeline Construc-
tion, Inc., an Okla. corp.; Halliburton
Company, an Okla. corp.; Fiberglass
Fabricators, Inc., an Okla. corp.; Heat-
flow Services, Inc., an Okla. corp.; Pool
Well Servicing Co., a Texas corp.; J &
B Pipe Supply Co., an Okla. corp.; Se-
curity Bank and Trust Co. of Midwest
City, Okla., a national banking associa-
tion; Federal Deposit Insurance Corp.
as liquidating agent of First Continen-
tal Bank and Trust Co., Del City, Okla-
homa; and Hercules Energy, Defen-
dant,

and

City National Bank of Fort
Smith, Intervenor.

Nos. 70129, 71364.

Supreme Court of Oklahoma.

May 30, 1990.

Dan Batchelor, Batchelor and Johnson, P.C., Oklahoma City, for appellant.

Gregory E. Gore, Fred S. Morgan, Reynolds, Ridings & Hargis, Oklahoma City, for appellee.

Don R. Nicholson, II, Eagleton & Nicholson, Oklahoma City, for intervenor.

OPALA, Vice Chief Justice.

The husband-debtor's ex-wife tenders two issues for our decision in this appeal: (1) Does the husband's mortgage of non-homestead property they owned together, given without the wife's knowledge or consent, have priority over the lien impressed in her favor by the divorce decree? and (2) Did the foreclosure sale comply with Oklahoma law? We answer the first question in the affirmative insofar as it applies to the husband's prior (pre-mortgage) interest in the property and in the negative insofar

as it affects the wife's prior (pre-divorce) interest in the premises. Our response to the second question is in the negative.

## ANATOMY OF LITIGATION

In 1975 Ted (husband) and Peggy (wife) Moss mortgaged certain Cleveland County real estate which they owned together.[1] This mortgage was subsequently assigned to City National Bank of Ft. Smith, Arkansas (CNB). In 1982 and 1983 the husband and a woman posing as his wife executed additional mortgages on that property to First Continental Bank of Del City (FCB). *Unchallenged here are the trial court's findings that the wife did not sign these mortgages, received no benefit from the loans, and thus bears no obligation to FCB.* The FDIC is successor to the interest of FCB.

### A.

The couple divorced in 1984. The husband was awarded the property in contest as part of the decree-effected division of spousal assets. It was set apart to him "subject to mortgages and encumbrances of record and further subject to a lien in favor of Peggy L. Moss in the amount of $395,000.00."

Husband subsequently defaulted on the CNB and FCB loans. The trial court concluded that by force of the "after-acquired title doctrine," CNB's mortgage and "all other mortgages pertaining to this land" were impressed upon all of the husband's interest in the property, including the half interest he acquired through the divorce decree. The court gave CNB a judgment against the husband and the wife. The first-lien status of CNB's mortgage is not disputed.

The court also gave judgments to the FDIC and to the wife against the husband.

Because it was later in time, the wife's decree-conferred lien received third priority—one that is to follow CNB's lien and those of FDIC. *The first appeal (No. 70,-129) tenders the wife's challenge to the decreed priority of the FDIC's mortgage liens over her equitable lien.* The priority contest between the FDIC's mortgage liens and the wife's equitable lien presents a question of first impression.

### B.

The trial court ordered the liens to be foreclosed and the property sold. Three competent appraisers appointed by the Cleveland County sheriff valued the land at $300,000 for its existing agricultural use. Prior appraisals secured at FDIC's request—one of which was made within weeks before the sale—estimated a significantly higher market value for the property.[2] Another, ordered by the wife, suggested the market value would be appreciably enhanced by the premises' sale as two parcels[3] and by taking into account their potential use for sand, gravel, and topsoil excavation.[4]

The FDIC bought the property for $200,-000; the trial court confirmed its purchase. *The second appeal (No. 71,364) challenges the court's approval of the foreclosure sale to FDIC.* At the confirmation hearing, the trial court found that (a) the $300,-000 appraisal was less than fair market value; (b) it was disproportionate to fair market value; and (c) the appraisal was influenced by the scheduled sale of the property at a sheriff's sale. The court ruled that it would not hold itself bound by any of its findings and conclusions when establishing the credit to be given the husband on a motion for deficiency judgment.

The trial court held further that the sale could not be set aside unless the price was

1. The wife referred to her ownership quantum as a "one-half undivided interest." Her testimony is *neither disputed by the record nor contested by the parties,* but its exact meaning is unclear.

2. The values ranged from $651,750 to $1,189,-000.

3. The property consisted of two distinct parcels contiguous only at one corner.

4. This appraisal suggested a value of $986,500.

**1362**

so low as to shock its conscience *and* (sic) the buyer's conduct could be characterized as tainted by an element of unfairness. Although the trial court found that FDIC knew the property was worth significantly more than the bid price, it could ascribe no unfairness to FDIC's actions. During the pendency of this appeal, FDIC filed a "stipulation and confession of error" admitting that (a) the sale price was grossly inadequate, (b) the appraisal and sale were irregular, and (c) the trial court misstated the law when confirming the sale.

## I.

## PRIORITY OF LIENS

The doctrine of after-acquired title, also called estoppel by deed, is a common-law concept codified in 16 O.S.1981 § 17.[5] The doctrine is invocable against a grantor who conveys under warranty an interest he does not then have but acquires later.[6] It is the prior conveyance or encumbrance *under warranty of title*—rather than by quit-claim deed—that is the doctrine's cornerstone and forms the conceptual underpinning that triggers its application. The doctrine's purpose is to assure that grantor's or encumbrancer's warranty is effectuated. With respect to consensual liens, the doctrine ensures that if a borrower gives a mortgage upon land to which he has no

title, its lien will impress itself upon that land when the mortgagor later acquires it.

The conveyance from a "titleless" grantor (or mortgagor) vests in the grantee (or mortgagee) equitable title, so that when the former thereafter acquires legal title, it will—by force of law—instantly pass to the latter. Because the grantor's *after-acquired interest* is viewed as a "bare legal title", the grantee's equitable interest in the premises attaches *immediately* (*eo instante*), and that interest cannot be subjected to an outstanding judgment lien against the grantor.[7] When two grantees hold equitable title under the after-acquired title doctrine, the earlier in time prevails.[8]

The husband and wife owned the property in question together when the husband granted an effective lien to FCB on his one-half interest and an invalid lien (because of her forged signature) on the wife's one-half interest. To meet the terms of Title 12 O.S.1981 § 1278,[9] the divorce decree severed the spouses' common title.[10] The wife's estate—a possessory one-half interest—became transformed into an equitable lien and impressed upon the entire tract. That tract was then already encumbered by the husband's prior effective mortgages to FCB of his one-half interest and by the couple's earlier mortgage of the entire tract to CNB. The decree transmuted the husband's one-half possessory inter-

---

**5.** The terms of 16 O.S.1981 § 17 state:
All rights of a mortgagor or grantor in and to the premises described in the instrument and existing at the time or subsequently accruing, shall accrue to the benefit of the mortgagee or grantee, and be covered by his mortgage or conveyed by his deed, as the case may be.

**6.** See *Equitable Royalty Corp. v. Hullet,* 206 Okl. 233, 243 P.2d 986 [1952]; *Lucas v. Cowan,* Okl., 357 P.2d 976 [1960].

**7.** See *Brown v. Barker,* 35 Okl. 498, 130 P. 155 [1912].

**8.** See *Campbell v. Butler,* Okl., 770 P.2d 7 [1988]; rehearing denied [1989].

**9.** 12 O.S.1981 § 1278, now 43 O.S.Supp.1989 § 121, provides for an equitable division of the marital estate pursuant to a divorce. This section states in pertinent part:

... As to such property, whether real or personal, which has been acquired by the parties jointly during their marriage, whether the title thereto be in either or both of said parties, the court shall make such division between the parties as may appear just and reasonable, by a division of the property in kind, or by setting the same apart to one of the parties, and requiring the other thereof to pay such sum as may be just and proper to effect a fair and just division thereof....

**10.** See *Harmon v. Harmon,* Okl., 770 P.2d 1 [1983], rehearing denied [1988]; *Peters v. Peters,* Okl., 539 P.2d 26 [1975]. For an explanation of how property interests are transformed under 12 O.S. § 1278, see *Collins v. Oklahoma Tax Commission,* Okl., 446 P.2d 290 [1968].

est into sole legal title in the entire property.

■ Because the husband *warranted* to FCB he had good title to the entire tract at the time he mortgaged it, his mortgage extends to *any* interest in the premises to which he *then* had or *later* acquired title. The husband is hence estopped to deny that the liens of his mortgages stand impressed on all of *his* interest in the mortgaged property.

■ The very definition of estoppel by deed suggests that it cannot be applied against the wife's interest. She did not convey any estate she did not then possess, nor did she ever "reacquire" any interest in the premises in contest. Instead, because her decree-conferred lien stands as but a transformation of her prior one-half possessory interest in the entire tract, her decree-conferred lien is *pro tanto* (to the extent of that one-half interest) the functional equivalent of a purchase money mortgage.[11] The lien of a purchase money mortgage "has priority over all other liens created against the purchaser." This is so because in contemplation of law the title of a purchase money mortgagor comes to him *already burdened* with the lien of that mortgage.[12]

The interest in the property which the husband acquired from the wife through the divorce decree, and upon which the FDIC's lien is sought to be impressed in reliance on the after-acquired title doctrine, *is the very one-half interest* transferred in the division of the spousal estate.[13] This is, of course, the same one-half interest in which the wife's decree-conferred lien now stands as the functional equivalent of a purchase money mortgage. Because the FDIC's mortgages cannot attach to a quantum of estate greater than the husband received through the divorce decree, those mortgages must stand as inferior to the wife's lien insofar as they are sought to be impressed upon the wife's decree-converted one-half interest.

When the husband and wife became divorced, his one-half interest stood encumbered by the FDIC's lien. Just as estoppel by deed does not avail here against the wife's interest, neither does the decree-effected interest transformation prejudice the claims of the divorcing parties' creditors. Because the wife's decree-conferred equitable lien could not attach to more than the couple then had, her lien must remain inferior to the husband's prior valid mortgages that attached to his one-half interest.

In sum, FDIC's mortgage liens, already impressed on the husband's pre-divorce one-half interest, also attached to the one-half interest he acquired from his wife. *But* because the latter interest came to him already encumbered by her lien, with respect to that one-half interest the FDIC liens must be assigned to third place—to stand behind the liens of CNB and the equitable lien of the wife.

In short, each of these contesting parties has a second lien on a one-half interest in the tract and a third lien in the other half.

## II.

### ALLEGED ERROR IN THE ORDER CONFIRMING FORECLOSURE SALE

The wife seeks to reverse the trial court's order which confirmed the sale to the FDIC for two-thirds of the value assessed by the sheriff's appraisers. FDIC filed herein a stipulation confessing error by conceding that the sale price was grossly inadequate, the appraisal and sale were irregular, and the trial court misstated the

---

**11.** The wife's decree-conferred lien is analogous to a purchase money mortgage because, as in the latter case, a prior estate was transformed here into a security interest and the transferee's (husband's) title came to him already burdened with the lien in transferor's (wife's) favor.

**12.** 42 O.S.1981 § 16.

**13.** The wife's ownership of one-half interest in the property predates both the FDIC's mortgages and the husband's acquisition of her interest in the divorce decree.

law when confirming the sale. CNB (uncontested senior lienholder) opposes this confession, urging that the sale be confirmed.

Confirmation of a foreclosure sale is largely within the discretion of the trial court. Its order will not be disturbed unless abusive of lawful discretion.[14] The FDIC's confession calls for an examination of the record. It is not binding on this court and cannot alone support the order's reversal. Solemn judicial acts are not vulnerable to appellate nullification at a party appellee's will.[15] Nevertheless, the confession may be used to assist in determining error in the challenged confirmation order.

A confirmation's reversal is proper when (1) the sale price is so grossly inadequate that it shocks the conscience of the court;[16] (2) the sale price is grossly inadequate and the sale is tainted by additional circumstances;[17] or (3) the result is inequitable to one or more of the parties before the court, whether owner, purchaser, or creditor.[18]

The trial court incorrectly assumed that gross inadequacy of sale price could not be the sole ground for refusing to confirm a foreclosure sale, even if that inadequacy "shocked the conscience" of the court. On this record, we cannot be certain that the trial judge's wrong assumption of the applicable norm of law did not affect his ruling.

Nonetheless, the FDIC—the party who stands to lose the most from a vacation of the sale—concedes that the price paid was "grossly inadequate" and admits an irregularity in the sheriff's failure to appraise the two parcels both separately and together and to sell them in the manner which would result in obtaining the best price. The record clearly supports the FDIC's confession. We therefore give it our approval and remand the cause for re-appraisal and re-sale.

Even if no confession had been filed, there is good reason here to reverse the confirmation order. When the trial court confirmed the sale, the wife's lien was in "last place"; now as to one-half of the tract her lien stands second in the rank of priority. This change alone counsels that the critical issues tendered at the confirmation hearing call for a different assessment. A result that might have then appeared equitable would not be so now in light of the changed priorities. The wife's advanced rank in the order of priority gives her a greater stake in the proceeds at resale.

The trial court's order determining priority is affirmed in part and reversed in part, and the order confirming sale is reversed; the cause is remanded for further proceedings not inconsistent with today's pronouncement.

All the Justices concur.

**14.** *Duncan v. Eck,* 65 Okl. 250, 166 P. 121, 122 [1917].

**15.** *Smith v. Plains Petroleum Corp.,* Okl., 25 P.2d 323, 325–26 [1933].

**16.** "As a general rule mere inadequacy of consideration is not sufficient ground for setting aside a sheriff's sale, but all of the authorities hold uniformly that when gross inadequacy of consideration, coupled with very slight additional circumstances, is sufficient to set aside such sale, and that *where the consideration is so grossly inadequate as to shock the conscience of the court, or is very great, it is alone sufficient.*" *Id.* (Emphasis added.) This rule is generally uniform in this country and in England. *See Gelfert v. National City Bank of New York,* 313 U.S. 221, 232, 61 S.Ct. 898, 902, 85 L.Ed. 1299 [1941]. *See also* numerous sources for the rule in *State v. Harrower,* 167 Okl. 269, 29 P.2d 123, 125–130 [1934].

**17.** *Duncan* and related authorities, *supra* note 14.

**18.** "It is the duty of the court in confirming or setting aside a sheriff's sale to protect all parties concerned, the owners and the creditors of the owners as well as the purchaser.... The sale must appear to be in all essential respects fair and proper, or it will not be confirmed, and *the simple fact that confirmation would sacrifice the interests of those entitled to the protection of the court is sufficient ground for a refusal to confirm.* *Duncan, supra* note 14 166 P. at 122. (Emphasis added.)