**FOUNDERS BANK AND TRUST COMPANY, a national banking association, Plaintiff–Appellee,**

v.

**Betty Lee UPSHER, Sidney P. Upsher and Philip Boyle, Jr., Defendants– Appellants,**

**and**

**50 Rockwell Associates, Ltd., an Oklahoma limited partnership, Gary C. Johnston and John L. Hessel, general partners of 50 Rockwell Associates, Ltd., Gary C. Johnston and John L. Hessel, individuals, Star Construction Company, an Oklahoma corporation, and United States of America acting through the Small Business Administration, Defendants.**

No. 68660.

Supreme Court of Oklahoma.

March 17, 1992.

John W. Swinford, Jr., Mitchell D. Blackburn, Hastie and Kirschner, Oklahoma City, for appellee.

John E. Sargent, Jr., Joseph H. Bocock, M. Richard Mullins, Kerry L. Balentine, McAfee & Taft, Oklahoma City, for appellants.

OPALA, Chief Justice.

Two questions are presented on certiorari: (1) Were the guarantors entitled to cred-it on the Bank's judgment against them for the fair market value of the property sold at sheriff's sale rather than for the amount of the sale's confirmed proceeds? and (2) Did the trial court correctly allot the amount realized from the security's sale to that portion of the judgment that is unaffected by the guaranty agreement? We answer the first question in the negative and the second question in the affirmative.

## I.

## THE ANATOMY OF LITIGATION

Founders Bank and Trust Co. [Bank] lent money to a limited partnership. Evidenced by a promissory note, the obligation was secured by a mortgage on real property and by five guarantors in separate agreements,[1] identical except that a typed provision specified a fixed percentage of the

1. The pertinent terms of the guaranty agreements are:

"WHEREAS, the Bank has extended a certain loan (the 'Loan') to 50 ROCKWELL ASSOCIATES, LTD., An Oklahoma Limited Partnership (the 'Borrower'), in the principal amount of ONE MILLION EIGHT HUNDRED FIFTY THOUSAND DOLLARS ($1,850,000.00) which loan is evidenced by a certain promissory note (the 'Note') in such principal amount, issued pursuant to the terms contained in a certain Loan Agreement, and payment of which Note is secured by certain collateral documents more specifically described in the Loan Agreement (which Loan Agreement, Note and collateral documents are hereafter collectively called the 'Loan Documents'), all of even date herewith and executed and delivered or caused to be executed and delivered by the Borrower to the Bank; and

WHEREAS, this Agreement is executed by the Guarantor and delivered to the Bank to induce the Bank to make the Loan and in satisfaction of a material condition precedent to such extension of credit by the Bank.

NOW, THEREFORE, in consideration of the Loan by the Bank to the Borrower and the benefits to be derived by the Guarantor therefrom, it is agreed as follows:

1. The Guarantor guarantees to the Bank the absolute, complete and punctual performance of the agreements of the Borrower contained in the Loan Documents and all other instruments hereafter evidencing or securing payment of the Loan, including, without limitation, the payment of all principal, interest, attorneys' fees, expenses of collection and oth-er sums now or hereafter owing by the Borrower to the Bank thereunder. The obligation of the Guarantor hereunder is *an absolute, unconditional and continuing guaranty of payment of the Loan* and any renewals, consolidations, modifications, and extensions thereof and any substitution therefor.

2. The Bank may, at the option of the Bank, proceed to enforce this Agreement against the Guarantor (and any collateral securing performance of the Agreement owned by the Guarantor) without first proceeding against the Borrower or any other person liable for payment or performance under the Loan Documents and without first proceeding against or exhausting any collateral now or hereafter held by the Bank to secure payment or performance under the Loan Documents.... *Notwithstanding anything to the contrary herein contained, the aggregate liability of the Guarantor under this Agreement will never exceed that amount which is equal to ___% of the unpaid principal balance of the Note together with ___% of all accrued interest and expenses due on the Note.*

\* \* \* \* \* \*

4. Nothing herein contained will limit the Bank in exercising any rights held under any one or more of the Loan Documents. On the occurrence of any event of Default under the Loan Documents or this Agreement, the Bank will be entitled to selectively and successively enforce any one or more of the rights held by the Bank and such action will not be deemed a waiver of any other right held by the Bank. All of the remedies of the Bank under this Agreement and the Loan Documents are cu-

total unpaid obligation each guarantor would bear. The two general partners each guaranteed payment of one hundred percent of the note's unpaid balance, with interest and expenses; one limited partner guaranteed twenty-five percent and two others each guaranteed twelve and one-half percent of the same amount. The principal defaulted and the Bank sued (1) on the promissory note, (2) to enforce the guaranty agreements and (3) to foreclose the mortgage.

The trial court gave the Bank an agreed judgment against the principal and each guarantor, jointly and severally. The prop-

erty was to be sold with the proceeds to be applied toward the judgment's satisfaction unless the obligation were paid immediately.[2] No money was paid and the Bank proceeded with execution. It also initiated collection efforts against the guarantors. One day before the sheriff's sale, the three guarantors who were limited partners, Betty Lee Upsher, Sidney P. Upsher and Philip Boyle, Jr. [collectively referred to as the guarantors], brought a postjudgment plea for credit on the guaranty-debt judgment.[3] They contended our anti-deficiency statute, 12 O.S.1981 § 686, entitled them to an offset in the full amount of the mortgaged

mulative and not alternative. *If the Bank elects to foreclose any lien created by the Loan Documents, the Bank is authorized to purchase for the account of the Bank all or any part of the collateral covered by such lien at public or private sale and to credit the amount recovered first against that portion of the Loan for which the Guarantor is not liable with any balance remaining to be applied in reduction of the liability of the Guarantor hereunder.* * * * *" [Emphasis supplied].
The following percentages were inserted in the blanks: Gary C. Johnston–100%, John L. Hessel–100%, Betty Lee Upsher–25%, Sidney P. Upsher–12½%, Philip Boyle, Jr.–12½%.

**2.** The pertinent provisions of the court's adjudication are:

"* * * IT IS THEREFORE ORDERED, ADJUDGED AND DECREED THAT:
A. FOUNDERS have judgment against ROCKWELL, JOHNSTON, HESSEL, B. UPSHER, S. UPSHER AND BOYLE, jointly and severally, as follows:
(1) FOUNDERS have judgment against ROCKWELL, JOHNSTON AND HESSEL, and each of them, jointly and severally, for the Total Indebtedness;
(2) FOUNDERS have judgment against B. UPSHER in the amount of twenty-five percent (25%) of the Total Indebtedness;
(3) FOUNDERS have judgment against S. UPSHER in the amount of twelve and one-half percent (12½%) of the Total Indebtedness; and,
(4) FOUNDERS have judgment against BOYLE in the amount of twelve and one-half percent (12½%) of the Total Indebtedness.
B. The Mortgage is a first mortgage lien and security interest in favor of FOUNDERS and covering the Mortgaged Property.
C. If the money judgments in favor of FOUNDERS set forth above are not paid immediately, then on written praecipe of

FOUNDERS being filed, the Clerk of the District Court will issue Special Execution and Order of Sale in foreclosure covering the Mortgaged Property, commanding the Sheriff of Oklahoma County to levy upon the Mortgaged Property, and directing the Sheriff of Oklahoma County to proceed to advertise and sell the Mortgaged Property and apply the proceeds derived from the Sheriff's sale as follows:
(1) In payment of all costs of sale;
(2) In payment of the judgments in favor of FOUNDERS; and
(3) The residue, if any, to be held by the Clerk of the District Court to await further order of the Court. * * *"
The provisions quoted in this footnote were first memorialized in a December 11, 1986 document titled "Journal Entry of Judgment", by which *certain issues* not pertinent to this appeal were shown to have been reserved. "A *judgment* is the *final determination of the rights of the parties* in an action." 12 O.S.1981 § 681. [Emphasis supplied]. When the court disposes of but a portion of the claim and leaves other issues unresolved, *there can be no judgment. F.D.I.C. v. Tidwell,* Okl., 820 P.2d 1338, 1343 (1991) (Opala, C.J., concurring in result). We therefore view the December 11, 1986 record entry to have been but an *interlocutory adjudication anterior to the judgment. The latter came to be pronounced on January 12, 1987 when all the issues stood decided.* The provisions of the December 11, 1986 interlocutory adjudication were attached to and incorporated by reference in the January 12, 1987 judgment.

**3.** Some of the defendants below are not parties to this appeal. They are (1) the principal, 50 Rockwell Associates, Ltd., (2) Gary C. Johnston and John L. Hessel, either in their capacity as general partners of the limited partnership or as individuals, and (3) the lien claimants, Star Construction Company and United States of Amer-

property's fair market value.[4]

The Bank purchased the property at sheriff's sale while the guarantors' post-judgment motion was pending. The sale stood confirmed when no objections to confirmation were lodged. *In a postconfirmation order the nisi prius court denied the guarantors credit for the property's fair market value. Although it ordered the Bank's judgment reduced by the proceeds of the then confirmed sheriff's sale, the court permitted the Bank to apply the sale proceeds first to that portion of the judgment which is unaffected by the guaranty agreement.[5] A second postconfirmation order set the amount of the guarantors' supersedeas bonds.[6]*

ica, acting through the Small Business Administration.

4. The second paragraph of 12 O.S.1981 § 686 provides:

" * * * In any action ... other than an action to foreclose a mortgage, to recover a judgment for any indebtedness secured by a mortgage on real property and which originated simultaneously with such mortgage and which is secured solely by such mortgage, against any person or corporation directly or indirectly or contingently liable therefor, any party against whom a money judgment is demanded, shall be entitled to setoff the fair and reasonable market value of the mortgaged property less the amounts owing on prior liens and encumbrances...."

12 O.S.1981 § 686 is called the anti-deficiency statute. This is so because in mortgage foreclosure actions, when a creditor fails to seek an order determining a deficiency on the judgment within 90 days after foreclosure sale, the mortgagor's liability may be considered to have terminated by fictional satisfaction of the mortgage debt.

Many states adopted anti-deficiency statutes much like our § 686 at a time of greatly deflated land values in a depressed economy. *Riverside Nat. Bank v. Manolakis,* Okl., 613 P.2d 438, 440–441 & n. 4 (1980). The text of § 686 was originally adopted from Kansas. *Mehojah v. Moore,* 744 P.2d 222, 225 (Okl.App.1987) (approved for publication by the Supreme Court). A New York statute supplied added terms for the 1941 amendment of § 686. N.Y. Real Prop. Acts. Law § 1371 (49½); *Ingerton v. First National Bank & Trust Co. of Tulsa,* 291 F.2d 662, 665 (10th Cir.1961), later appeal on another issue, 303 F.2d 439 (10th Cir.1961).

*Because mortgage debtors cannot contract away the statute's benefits, they are the principal beneficiaries of this statute. Conversely, persons other than the mortgage debtor may effectively relinquish the right to set off the fair market value of mortgaged property. Riverside, supra* at 441. *See Black v. O'Haver,* 567 F.2d 361, 372 (10th Cir.1977), cert. denied, 435 U.S. 969, 98 S.Ct. 1609, 56 L.Ed.2d 61 (1978), where a clause in the guaranty contract was held to waive any defense the guarantor may assert by invoking the fictional satisfaction of the principal debt prescribed by the terms of 12 O.S.1981 § 686. *See also infra* notes 23, 29, and 31.

5. The pertinent terms of the *postconfirmation order* of March 27, 1987 are:

"... and the Court finds:
1. The amount of the sheriff's sale $1,200,-000.00 shall be applied and reduce the judgment in favor of Founders.
2. The guarantors, Johnston, Hessel, B. Upsher, S. Upsher and Boyle are not entitled to set-off the fair market value of the real property mortgaged to Founders.
3. Founders may proceed with execution and collection of the judgment as to the respective amounts owed by Johnston, Hessel, B. Upsher, S. Upsher and Boyle.
IT IS SO ORDERED."

*The postconfirmation order was erroneously titled "Judgment as to Guarantors." The judgment in this case was given on January 12, 1987; see supra* note 2 for the pertinent provisions of the court's adjudication and the explanatory comment on the definition of "judgment"; *see also infra* note 8 where we refer to the term "deficiency judgment" as a misnomer.

6. The pertinent terms of the April 17, 1987 order are:

"... and the Court finds:
1. The amount of the Total Indebtedness as of March 27, 1987 is Two Million One Hundred and Seventy–Six Thousand Six Hundred One Dollars ($2,176,601.00).
2. FOUNDERS has judgment against B. UPSHER in the amount of twenty-five percent (25%) of the Total Indebtedness, or Five Hundred Forty–Four Thousand One Hundred Fifty Dollars and Twenty–Five Cents ($544,-150.25) effective March 27, 1987.
3. FOUNDERS has judgment against S. UPSHER in the amount of twelve and one-half percent (12½%) of the Total Indebtedness, or Two Hundred Seventy–Two Thousand Seventy–Five Dollars and Twelve Cents ($272,075.12) effective March 27, 1987.
4. FOUNDERS has judgment against BOYLE in the amount of twelve and one-half percent (12½%) of the Total Indebtedness, or Two Hundred Seventy–Two Thousand Seven-

On appeal the guarantors contended their liability was limited to a fixed percentage of the unpaid judgment whose amount must be computed by deducting the sold property's *fair market value* and then determining the portion of the debt for which the affected guarantor *stands as security*. The appellate court reversed the *nisi prius* orders on the grounds that the anti-deficiency statute, 12 O.S.1981 § 686, entitles the guarantors to set off the mortgaged property's fair market value. It resolved in guarantors' favor a dispute over the guaranty agreement's text.[7] The appellate court's opinion instructed the trial court to credit *the property's fair market value to that portion of the judgment for which each guarantor's agreement stands as security.*[8]

> ty–Five Dollars and Twelve Cents ($272,-075.12) effective March 27, 1987.
>
> \* \* \* \* \* \*
>
> IT IS SO ORDERED."

7. The appellate court held that the provision in clause two, which limits the guarantor's obligation to a fixed percentage of the note's unpaid balance, conflicts with two other provisions of the agreement: first, the statement in clause one that the obligation is an absolute, unconditional and continuing guaranty of the loan's payment, and second, that part of clause four that mandates application of *the amount recovered at sheriff's sale first against that portion of the judgment which is not affected by the guaranty.* Because the fixed percentage term contains the preferential language "notwithstanding anything to the contrary herein contained" and it is *typed,* the court construed the agreement in guarantors' favor. It applied the canon of construction that typed provisions control over those of a printed form. *See supra* note 1 for the text of the guaranty agreement. *We reject the court of appeals' construction. See our discussion infra Section III.*

Clause two contains a term similar to the clause four provision described previously. The parties agree that the similar provision is inapplicable here and would have applied *only* if the Bank had proceeded *solely* against the guarantors.

8. The appellate court instructed that on remand evidence be taken of the property's fair market value. The guarantors contend that subsequent to this appeal the trial court entered a "deficiency judgment" against the principal, and they seek to make that "judgment" a part of the appellate record. Bank opposes their motion.

## II.

## POSTCONFIRMATION LITIGATION

■ The Bank characterizes the guarantors' setoff plea as a compulsory affirmative defense. It urges the guarantors' failure to press that issue before judgment is fatal to their plea for credit. According to the Bank, that issue is no longer invocable because the guarantors neither appealed from nor sought to modify the January 12, 1987 judgment. The short answer to the Bank's contention is that because the setoff issue *did not arise* until *after special execution on the mortgaged property had issued, it was not available as a counterclaim.*[9]

The landmark decision that distinguishes a postjudgment plea for credit from a quest to modify a judgment[10] is *Willis v.*

"This court will not consider as part of the appellate record any written or printed instrument that was not properly included in it." *Eckel v. Adair,* Okl., 698 P.2d 921, 925 (1985); *Mayhue v. Mayhue,* Okl., 706 P.2d 890, 895, n. 17 (1985). Because we hold the guaranty agreement in suit did not tie the guarantors' liability to that of the principal, the omission from the record of the order determining the principal debtor's deficiency on the judgment will not affect the outcome of guarantors' obligation.

The term "deficiency judgment" is a misnomer. In *F.D.I.C. v. Tidwell, supra* note 2 at 1341, the court held that there can be but one "judgment" upon a single cause of action. In a foreclosure proceeding the single judgment is the court's determination of the amount due the creditor and its order that the encumbered property be sold to satisfy the mortgage lien. *Mehojah v. Moore, supra* note 4 at 225 (approved for publication by the Supreme Court). Although a "so-called deficiency judgment" may have the effect of a judgment for some purposes, it is *stricto sensu* a postjudgment order determining a deficiency on a judgment previously rendered. *See F.D.I.C. v. Tidwell, supra* note 2 at 1341, n. 2; *Nowata Land & Cattle Co., Inc., infra* note 11 at 1285, n. 11; *Jones v. England,* Okl., 782 P.2d 119, 121 (1989); *Baker v. Martin,* Okl., 538 P.2d 1048, 1049–1050 (1975).

9. *Willis v. Nowata Land and Cattle Co., Inc., see infra* note 11 at 1285.

10. For statutory provisions that govern modification of judgments *see* 12 O.S.1991 § 1031 *et seq.*

*See* in this connection *American Bank of Oklahoma v. Adams,* Okl., 514 P.2d 1191, 1193 (1973), where we prohibited modification and held that where a judgment decrees joint and

*Nowata Land and Cattle Co. Inc.*[11] *Willis* was a foreclosure action in which the borrower sought credit for fire insurance proceeds on a previously adjudicated mortgage debt. We noted there that postconfirmation litigation, which ordinarily encompasses *only* issues that arose *after* the sheriff's sale and confirmation, may include pleas for *credit on the judgment.* The guarantors' *quest for credit, here under consideration, clearly is a genuine postconfirmation issue.* The decision to grant or deny credit for the property's fair market value would neither *alter the terms of the now confirmed judicial sale* nor *modify the now unassailable judgment.* It would merely define the amount the Bank may demand in *satisfaction* of its unpaid judgment.[12]

### III.

### THE GUARANTORS' PURELY CONTRACTUAL OBLIGATION

### A.

### THE BREADTH OF THE UNDERTAKING

■ The Bank contends the agreement's terms are consistent because the guarantors ensure payment of a fixed percentage of the *note's* unpaid balance *upon default,* rather than a percentage of the *unpaid judgment* after *credit for other sources of payment.*

■ Oklahoma's guaranty jurisprudence is well established. "A guaranty is a promise to answer for the debt, default or miscarriage of another person."[13] The guarantor's obligation is *collateral* to that of the principal debtor or obligor and *independently* and *separately enforceable.*[14]

■ Because the present case deals with private-law guarantors, we must apply the general rule that *obligations of a private-law guarantor are purely contractual.*[15] The intent of the parties at the time they entered into the agreement controls the meaning of the written contract.[16] The *precise terms of the guarantor's undertaking* and the *extent of the given promise govern the breadth of the obligation.*[17]

■ Intent is to be gathered from the *entire instrument.*[18] Where the language

several liability, the *possibility* of contribution does not diminish liability for the *full amount of an unsatisfied judgment's balance.*

11. Okl., 789 P.2d 1282, 1285 (1990).

12. Guarantors' postconfirmation motion now under review is titled "motion for evidentiary hearing to determine fair market value of property to offset against judgment ..." We must measure the meaning and effect of any court-filed paper by its content rather than by the author-provided title. *Willis, supra* note 11 at 1285, n. 9; *Hulsey v. Mid–America Preferred Ins. Co.,* Okl., 777 P.2d 932, 936, n. 14 (1989); *Horizons, Inc. v. KEO Leasing Co.,* Okl., 681 P.2d 757, 759 (1984); *Amarex, Inc. v. Baker,* Okl., 655 P.2d 1040, 1043 (1983); *Knell v. Burnes,* Okl., 645 P.2d 471, 473 (1982); *Ginn v. Knight,* 106 Okl. 4, 232 P. 936 (1925). We hence treat guarantors' motion as a *postjudgment demand for credit on the guaranty-debt judgment* in the amount of the mortgaged property's fair market value.

13. 15 O.S.1981 § 321; *Lum v. Lee Way Motor Freight, Inc.,* Okl., 757 P.2d 810, 814 (1988); *Rucker v. Republic Supply Company,* Okl., 415 P.2d 951, 953 (1966).

14. *Lum v. Lee Way, supra* note 13 at 814; *Riverside, supra* note 4 at 441.

15. *Lum v. Lee Way, supra* note 13 at 815; *Riverside, supra* note 4 at 441; Restatement of Law of Security § 382, comment g (1941).

16. The statutory rules for ascertaining that intent are set out at 15 O.S.1981 §§ 151 through 157. The terms of 15 O.S.1981 § 153 are:
 "For the purpose of ascertaining the intention of the parties to a contract, if otherwise doubtful, the rules given in this chapter are to be applied."
 The terms of 15 O.S.1981 § 152 are:
 "A contract must be so interpreted as to give effect to the mutual intention of the parties, as it existed at the time of contracting, so far as the same is ascertainable and lawful."

17. 15 O.S.1981 § 154; *Lum v. Lee Way, supra* note 13 at 815; *Riverside, supra* note 4 at 441.
 The terms of 15 O.S.1981 § 154 are:
 "The language of a contract is to govern its interpretation, if the language is clear and explicit, and does not involve an absurdity."

18. The terms of 15 O.S.1981 § 157 are:
 "The whole of a contract is to be taken together, so as to give effect to every part, if

is clear and explicit, there is no need to resort to extrinsic evidence to ascertain its meaning.[19] Where a contract is *complete in itself* but, *as viewed in its entirety is unambiguous*, its *language* is the *only legitimate evidence of what the parties intended.*[20] Absent illegality parties are *free to bargain* as they see fit. When the bargained-for agreement is in writing, a court may neither make a new contract to benefit a party nor rewrite the existing one.[21] A guaranty is to be *construed in favor of one who has parted with property* in *reliance* on the *collateral promisor.*[22]

Applying these general principles of guaranty, we hold that the agreement in contest was intended to assure a guarantor's payment of *a fixed percentage of the note's unpaid balance after crediting the confirmed sheriff's sale proceeds first to that portion of the judgment which is unaffected by the guaranty.* This is so because the clause that limits a guarantor's obligation to a fixed percentage of the note's unpaid balance *must* be considered *together with* the provision which details the procedure to be followed in case of a lien's foreclosure. We must hence conclude that the latter clarifies the meaning

of the term "unpaid balance." *When the agreement is read as a whole* we see no conflict between the terms. Clearly, the parties must have contemplated the amount recovered from the mortgaged property's sale might not be sufficient to satisfy the entire obligation. This is true because the guarantors were asked to stand as security for a fixed percentage of the *unsatisfied balance*—a balance that must be determined by giving credit for the sheriff's sale proceeds first to that part of the debt which is unaffected by the guaranty.[23]

 The guarantors assert it is unreasonable to hold them liable for a fixed percentage of the guaranty-debt judgment when the amount owed by the principal will be reduced by the mortgaged property's fair market value.[24] Oklahoma jurisprudence adheres to the principle that even though the result may be harsh, a party will be bound by the unambiguous terms of a contract.[25] Moreover, the legal effectiveness of a guaranty is *not dependent on the continued existence of the principal's debt.* Rather, it is co-extensive in its breadth and sweep with the terms of the

---

reasonably practicable, each clause helping to interpret the others."

19. *Lum v. Lee Way, supra* note 13 at 815; *Rucker v. Republic Supply, supra* note 13 at 953.

20. *Mercury Inv. Co. v. F.W. Woolworth Co.,* Okl., 706 P.2d 523, 529 (1985).

21. *Mercury Inv. Co., supra* note 20 at 530.

22. *Riverside, supra* note 4 at 442; *Lum v. Lee Way, supra* note 13 at 816; *Rucker v. Republic Supply, supra* note 13 at 954.

23. Lenders frequently confront potential losses upon application of the anti-deficiency statute. This is so because a forced sale seldom brings a property's fair market value. The predictable built-in loss is the difference between the fair market value of the property and the foreclosure sale proceeds. For this reason, lenders often are compelled to protect a loan's soundness by obtaining a guaranty for at least that portion of the indebtedness which would be lost

by application of the anti-deficiency proceedings. A blanket rule—one that could never be waived by a guarantor—would deprive lenders of their ability to bargain against loss occasioned as a result of the § 686 effect.

24. Guarantors contend the Bank *said* it had *applied* the proceeds to the judgment *prior to issuance of the court's postconfirmation order.* They say that this fact, coupled with the trial court's *order to reduce the Bank's judgment by the sale's proceeds,* would preclude the Bank from *later* claiming that it has credited the proceeds to a *particular portion* of the judgment. This argument is without merit. Even where there is no express agreement controlling the application of credit, by operation of law first payments will be considered as satisfying the portion of the loan which *is unaffected by the guaranty. Dunlap v. Stannard,* 19 Okl. 232, 91 P. 845 (1907).

25. *Cook v. Oklahoma Bd. of Public Affairs,* Okl., 736 P.2d 140, 147 (1987).

guarantors' enforceable promise.[26]

The terms of 15 O.S.1981 § 334 provide that the obligation of a guarantor must be neither larger in amount nor in other respects more burdensome than that of the principal. This rule relates to conditions at the time of a guaranty's *execution*.[27] An agreement's original obligation may be fixed to assure the guarantor's does not exceed that of the principal, but the guarantor may further agree that—upon the occurrence of some specified event—his liability will remain the same even though the principal's obligation may be decreased. The mortgaged property's sale was the specified event here and the parties agreed that if that event occurred, the sale proceeds would be used to reduce that portion of the debt which was not subject to the guaranty. Accordingly, the guarantors remain liable for a fixed percentage of the guaranty-debt judgment although the principal's debt may be eligible for reduction by the property's fair market value.

26. *Riverside, supra* note 4 at 440. *See F.D.I.C. v. Casey,* Okl., 741 P.2d 463, 465, (1987), where guarantors were held to their original obligation despite reinstatement of the principal's obligation in a bankruptcy reorganization.

27. Our holding is in harmony with that of the California Supreme Court in *Bloom v. Bender,* 48 Cal.2d 793, 313 P.2d 568, 574 (1957). In *Bloom* the court explained the origin and meaning of the rule and held that the release of the principal following composition with his creditors will not exonerate a surety who consented in specific terms to the alteration of the original obligation.

The terms of 15 O.S.1981 § 334 are:
"The obligation of a guarantor must be neither larger in amount, nor in other respects more burdensome than that of the principal; and if, in its terms, it exceeds it, it is reducible in proportion to the principal obligation."

Our guaranty and suretyship statutes were derived from North Dakota which state adopted them from California. Section 334 is identical to North Dakota's Century Code § 22–01–12 and California's Civil Code § 2809. Enacted in 1804, California's § 2809 is a restatement of a civil law's principle found in section 2013 of the Code Napoleon. *Bloom, supra* at 573–574.

28. *See* the terms of the guaranty agreement, *supra* note 1 at 4.

## B.

## THE AGREEMENT WAIVES STATUTORY SETOFF

The guaranty agreement specifically allows the Bank selective and successive enforcement of its rights; it provides that all the Bank's remedies are cumulative rather than alternative.[28] Clearly, none of the obligation requires that the Bank proceed first against either the property, the principal or any one of the five guarantors. The agreement contains the admonition that no action taken by the Bank may waive any of its other rights [29] and the promise that *if the Bank forecloses any lien created by the loan documents, it may buy the secured property at public or private sale and credit the amount recovered (not the fair market value) against the loan.*[30] This broad waiver disposes of the setoff issue and dispenses with the need to consider whether the anti-deficiency statute, 12 O.S.1981 § 686, avails to protect the guarantors.[31]

The protection of the Field Code provisions that regulate guaranty and

29. *See* the terms of the guaranty agreement, *supra* note 1 at 4. The appellate court found that because the Bank did not proceed *only* against the guarantors *first* but rather proceeded concurrently against the mortgaged property, the terms of 12 O.S.1981 § 686 were triggered. We hold that the Bank did not waive any of its rights by pursuing the three pronged suit (1) against the principal, (2) against the guarantors and (3) for the property's foreclosure. *The guaranty agreement's terms permitted concurrent action against those who were jointly and severally liable as well as against the collateral.*

30. The amount recovered has been approved by confirmation of the sheriff's sale. Guarantors did not contest this amount. *See infra* note 33.

31. In *Riverside, supra* note 4 at 441, we noted that our anti-deficiency statute, 12 O.S.1981 § 686, deals solely with the creditor/debtor relationship and does not govern the more complex, tripartite relationship of guarantor/debtor/creditor or rights under a guaranty agreement. Guarantors contend, and the appellate court agreed with them, that the statement is *dicta*. Guarantors urge that since they do not seek exoneration for a bank's failure to seek a deficiency upon a previously rendered judgment (the situation in Riverside) but instead plead for credit on the judgment, they have the right

suretyship relations in Oklahoma may be relinquished by contractual waiver.[32] When parting with funds, the promisee is free to exact from the promisor terms and conditions less favorable to a guarantor than those afforded by statute.[33] The guaranty agreement in suit provides *specific instructions to be followed if mortgaged property is foreclosed.* Its terms detail not only how to calculate the amount to be credited against the debt after foreclosure but also give specific directions for allocating the credit. By executing this agreement with the Bank, these guarantors waived any statutory right to setoff under 15 O.S.1981 § 341.[34]

The guarantors have neither contended nor shown that the guaranty agreement is unenforceable for public policy reasons, and we know of no legal impairment to its enforcement.

## IV.

## SATISFACTION OF JUDGMENT

■■■■■■ We are urged by the guarantors that the Bank will gain a windfall amounting to a double recovery if the appellate court's opinion is vacated.[35] The Bank responds that it seeks only one satisfaction of its judgment. Where there is joint and several liability, as is the case here, a judgment creditor may pursue all possible avenues of recovery simultaneously until the judgment is satisfied.[36] The possibility of collecting a judgment's un-

---

under § 686 to set off the property's fair market value. *See INA Life Ins. Co. v. Brandywine Associates,* Okl.App., 800 P.2d 1073, 1077 (1990); see also *Heckes v. Sapp,* 229 Cal.App.2d 549, 40 Cal.Rptr. 485 (Cal.App.1964), where the court held that California's anti-deficiency statute does not protect guarantors. *Everts v. Matteson,* 21 Cal.2d 437, 132 P.2d 476 (1943), is distinguishable. There, a guarantor was able to take advantage of the same anti-deficiency statute *only* by *assuming the debt* and thereby transforming himself into the "principal debtor."

The guarantors contend that § 686 should be construed as applicable to guaranty agreements because New York courts have placed this interpretation upon the statute. We disagree. For an explanation of our departure from this view, which was prompted by New York's failure to adopt a counterpart of our Field Code chapters dealing expressly with guaranty and suretyship obligations, *see Riverside, supra* note 4 at 440 & n. 7.

**32.** *Riverside, supra* note 4 at 442; in that case we discuss Oklahoma's adoption of the Field Code at 440, n. 7.

Guarantors cite *Dickason v. Dickason,* Okl., 607 P.2d 674, 677 (1980), for the proposition that no waiver is intended here. We held in *Dickason* that the intent to modify applicable law by contract is not effective unless the power is expressly exercised. To escape the incidence of general law, the agreement must not be silent as to the parties' intent vis-a-vis the applicable law. The agreement under consideration is most certainly not silent. The unambiguous terms of the waiver—in regular-size type—clearly describe what will happen if the mortgaged property is sold.

**33.** The contractual waiver in this case did not leave the guarantors without protection. A judi-

cial sale on foreclosure is not conclusive or binding until it is effectively *confirmed.* 12 O.S.1981 § 765; *Sooner Fed. S & L v. Okl. Cent. Cr. Union,* Okl., 790 P.2d 526, 529 (1990); *Willis v. Nowata Land & Cattle Co., supra* note 11 at 1285, n. 3; *State ex rel. Com'rs. of Land Office v. Warden,* 197 Okl. 97, 168 P.2d 1010, 1014 (1946). A sheriff's sale may be set aside when (1) the sale price is so grossly inadequate that it shocks the conscience of the court; (2) the sale price is grossly inadequate and the sale is tainted by additional circumstances; *or (3) the result is inequitable to one or more of the parties before the court.* It is the court's duty whether confirming or setting aside a sheriff's sale to protect all parties concerned. The sale must appear to be fair and proper in all essential respects. *United Oklahoma Bank v. Moss,* Okl., 793 P.2d 1359, 1364 (1990). A guarantor's interest gives him standing to challenge a defective sale. There is no legal impediment to a guarantor's purchasing the property at the sheriff's sale.

**34.** The terms of 15 O.S.1981 § 341 provide:

"The acceptance, by a creditor, of anything in partial satisfaction of an obligation, reduces the obligation of a guarantor thereof, in the same measure as that of a principal, but does not otherwise affect it."

**35.** The guarantors predict the Bank may attempt to collect *more than its judgment.* Oklahoma law affords due process to judgment debtors and is not without remedies for wrongful execution or garnishment. *See* 12 O.S.1991 §§ 731 *et seq.;* 12 O.S.1991 §§ 1170 *et seq.*

**36.** *New Amsterdam Casualty Co. v. Scott,* 106 Okl. 268, 234 P. 181, 184 (1925); *Cotner v. Lon Jacobs Grocery Co.,* 84 Okl. 1, 202 P. 997, 1002 (1921).

paid balance from others jointly liable does not diminish a judgment debtor's present liability for the full amount of the unsatisfied balance.[37] Actual payment in full to one authorized to receive it discharges the judgment.[38]

■ The liability of each guarantor stands correctly determined by the trial court's postconfirmation orders. The Bank may attempt to collect the balance of its judgment—after applying· the confirmed sheriff's sale proceeds to that portion of the judgment for which each guarantor does not stand as security—*from any or all of the guarantors.*[39] Satisfaction from each guarantor may not exceed the fixed percentage of the total indebtedness assessed by the trial court,[40] and the Bank may obtain but one complete satisfaction.

The Court of Appeals' opinion is vacated and the trial court's postconfirmation orders are affirmed.

LAVENDER and HARGRAVE, JJ., and LANE, S.J. (sitting by designation in lieu of DOOLIN, J., who certified his disqualification), LUMPKIN, S.J. (sitting by designation in lieu of KAUGER, J., who certified her recusal), and JOHNSON, S.J. (sitting by designation in lieu of SUMMERS, J., who certified his disqualification), concur.

HODGES, V.C.J., and SIMMS, J., dissent.

ALMA WILSON, J., concurs in part and dissents in part.

---

37. *American Bank of Oklahoma v. Adams, supra* note 10 at 1193; *Lumbermens Mut. Insur. Co., Mansfield, Ohio v. Blackburn,* Okl., 477 P.2d 62, 66 (1970).

38. *Hart v. Jett Enterprises,* Okl., 744 P.2d 561, 562 (1987); *Continental Gin Co. v. Arnold,* 52 Okla. 569, 153 P. 160, 162 (1915).

39. The two guarantors who did not appeal, Gary C. Johnston and John L. Hessel, each guaranteed 100% of the total indebtedness; the record does not reflect whether collection efforts against these persons took place, and if so, the extent, if any, of their success.

40. The amounts determined by the trial court as of *March 27, 1987* are as follows:
TOTAL INDEBTEDNESS: $2,176,601.00
B. UPSHER (25%): $544,150.25
S. UPSHER (12.5%): $272,075.12
BOYLE (12.5%): $272,075.12
Because these figures *do not* include interest and expenses which have accrued after that date, they are not now an accurate assessment of the amount owed.