OKLAHOMA OIL & GAS EXPLORATION, DRILLING PROGRAM 1985–A, a Limited Partnership; Phillip H. Myers, Individually; and Oklahoma Oil & Gas Exploration Company, a Virginia Corporation, Appellants,

v.

W.M.A. CORPORATION and W. Mike Adams, Appellees,

and

Union Texas Products Corporation; Sun Refining & Marketing Company; and Mid–Plains Petroleum Co., Inc., Interpleader/Defendants.

Nos. 80829, 80828.

Court of Appeals of Oklahoma, Division No. 3.

Feb. 1, 1994.

Rehearing Denied April 12, 1994.

Certiorari Denied June 15, 1994.

Robert H. Mitchell, Johnny J. Akins, Oklahoma City, for appellants.

Charles L. Helm, Oklahoma City, for appellee, W.M.A. Corp.

### OPINION

HANSEN, Judge:

This is an appeal of three consolidated actions. At trial, these three actions, C–88–14, C–88–43, and C–88–44, were consolidated with C–88–49, which is the subject of the related companion appeal, No. 80,828.[1] Except for the proposition of error discussed below and the final proposition of error in 80,828, the issues appealed in 80,829 are identical to the issues appealed in 80,828.[2] Accordingly, our opinion in 80,828 is hereby incorporated by reference to dispose of these identical issues.

1. The plaintiff in C–88–14, C–88–43 and C–88–44 is Oklahoma Oil & Gas Exploration Drilling Program 1985–A (the 1985 Program), while the plaintiff in C–88–49 is Oklahoma Oil & Gas Exploration Drilling Program 1983–A (the 1983 Program). The 1985 Program owns a non-operating working interest in five wells operated by WMA while the 1983 Program owns a non-operating working interest in four wells operated by WMA. The facts regarding WMA's acquisition of its interests in the wells are the same in both appeals.

2. The trial court rendered two separate sets of judgments in the consolidated action. In 80,829, (C–88–14, C–88–43 and C–88–44), judgment was

Appellants maintain the trial court gave them inadequate credits for pumpers and engines removed by WMA from three of the abandoned wells in which Appellants have an interest: the D–2, the K1–A and the K3–A. The evidence shows the pumpers and engines were new when originally put on the wells.[3] WMA opted to move the equipment to other wells which it operated instead of selling it to third parties and credited each well for $15,000. The trial court declined to calculate the credits for the equipment at 75% of the current new price, and affirmed WMA's credit to each well for $15,000.00 for the moved equipment.

■ Appellants say they are entitled to credit based on 75% of the equipment's cost, not on fair market value. They cite Section IV(2)(b)(2) of Exhibit C to the JOA to support the 75% figure.

Section IV of Exhibit C provides in pertinent part:

> Operator is responsible for Joint Account Material and shall make proper and timely charges and credits for all material movements affecting the Joint Property. Operator shall provide all Material for use on the Joint Property; however, at Operator's option, such Material may be supplied by the Non–Operator. *Operator shall make timely disposition of idle and/or surplus Material,* such disposal being made either through sale to Operator or Non–Operator, division in kind, or sale to outsiders.

\* \* \* \* \* \*

Paragraph 2 of Section IV provides in pertinent part:

> granted in favor of WMA and against Appellants for $19,720.57 for operating expenses due from the 1985 Program and for $47,796.25 in attorney fees and $11,361.63 for costs. In 80,828 (C–88–49), judgment was granted in favor of WMA and against the 1983 Program for $47,286.68 and for $47,796.25 in attorney fees and $11,019.60 in costs.

3. For the D–2 well, the pumping unit cost $26,845.00 and the engine cost $13,987.67 when installed. The pumping units for the K1–A well and the K3–A well cost $35,012.08 each. The engine for the K1–A cost $13,794.58 and the engine for the K3–A cost $13,987.67.

Material furnished to the Joint Property and Material transferred from the Joint Property or disposed of by the Operator, unless otherwise agreed to by the Parties, *shall* be priced on the following bases [sic] exclusive of cash discounts:

B. Good Used Material (Condition B)

(2) Material moved from the Joint Property

(a) At seventy-five percent (75%) of current new price, as determined by Paragraph 2A of this Section IV, if Material was originally charged to the Joint Account as new Material....

WMA maintains Section IV(2)(B)(2) does not apply to this equipment because the equipment was not "originally charged to the Joint Account as new material". It was not charged to the joint account, it reasons, because the wells were drilled on a turnkey basis. Although the testimony shows the wells were drilled on a turnkey basis, the original operator testified he billed the wells for the equipment on the basis of what he paid for it. Thus, the charges for the equipment were ultimately "shared by the parties".[4]

The trial court determined the two provisions in Exhibit C, the one requiring the operator to dispose of idle material and the one providing for credit at 75% of the current new price, were "inconsistent". They were "inconsistent", the trial court reasoned, because the evidence indicates the fair market value of the equipment at the time it was moved was less than 75% of the current new price. The court concluded WMA should not be held to the contractual term requiring credit at 75% because WMA would end up paying more than the equipment would get if sold to a third party. In other words, if WMA had sold the equipment to a third party, it could not have received 75% of the new price and the fact that WMA utilized the equipment themselves, should not put them in a "worse position" than if they had sold on the open market.

The JOA, including Exhibit C to the JOA, is a contract. The language of a contract governs its interpretation if the language is clear and unambiguous, and does not involve an absurdity. 15 O.S.1991, § 154. The language in a contract is given its plain and ordinary meaning unless some technical term is used in a manner meant to convey a specific technical concept. 15 O.S.1991, § 160; *Mercury Investment Company v. F.W. Woolworth Company,* 706 P.2d 523, 529 (Okla.1985). If the language is unambiguous, the court is to interpret it as a matter of law. *Corbett v. Combined Communications Corporation of Oklahoma, Inc.,* 654 P.2d 616, 617 (Okla.1982). Therefore, the practical construction of an agreement, as shown by the acts and conduct of the parties, is available only in the event of an ambiguity. *Mercury,* at 529.

Absent illegality, parties are free to bargain as they see fit. *Founders Bank and Trust Co. v. Upsher,* 830 P.2d 1355, 1362 (Okla.1992). When the bargained-for contract is in writing, a court may neither make a new contract to benefit a party nor rewrite the existing one. *Id.; Dismuke v. Cseh,* 830 P.2d 188, 190 (Okla.1992). The law will not make a better contract than the parties themselves have seen fit to enter into. *Dismuke,* at 190.

The trial court found two provisions in Exhibit C to be "inconsistent". This inconsistency was based solely on the fact of the equipment's fair market value, that is, extrinsic evidence. The language in Exhibit C is not ambiguous. There is no ambiguity in the provisions requiring the operator to dispose of the equipment and in establishing how the material will be priced. The parties were free to agree to a different method of establishing the price of good used material. They did not. Even though in light of the then *current* market conditions, WMA could have been "better off" if it sold the equipment to a third party, this fact does not authorize the trial court to make a better contract for WMA.

---

4. Section I(1) of Exhibit C defines "Joint Account" as the account showing the charges paid and credits received in the conduct of the Joint Operations and which are to be *shared by the Parties.*

**616**

Accordingly, the trial court's decision to credit Appellants for the equipment based on fair market value, was contrary to law. This issue is reversed and remanded to the trial court for a determination of credit to be given Appellants for the equipment based upon Section IV(2)(B) of Exhibit C to the JOA. All other provisions of the trial court's judgment are AFFIRMED.

This cause is REVERSED and RE-MANDED for proceedings consistent with this opinion.

JONES, P.J., and ADAMS, J., concur.