Chris TEAPE, Appellant,

v.

AMERICAN NATIONAL BANK
& TRUST COMPANY OF
SHAWNEE, Appellee.

No. 86441.

Court of Appeals of Oklahoma,
Division No. 3.

April 16, 1996.

Stanley M. Ward, Norman, for Appellant.

Jared D. Giddens and Christopher R. Graves, Self, Giddens & Lees, Inc., Oklahoma City, for Appellee.

## OPINION

BUETTNER, Judge:

This is an appeal of an October 17, 1995 summary judgment granted in favor of defendant American National Bank of Shawnee (Bank). Appellant Chris Teape filed suit against Bank in March 1995 alleging (1) breach of contract, (2) contractual breach of implied covenant of good faith and fair dealing, (3) tortious breach of contract, (4) negligence, and (5) unjust enrichment. Appellant was a party to a 1985 loan agreement whereby Bank loaned Appellant and others $440,-000.00 (1985 loan or loan). The loan was 90% guaranteed by the United States Small Business Administration (SBA).

In 1986, Appellant entered into a Settlement Agreement with Bank which, among other things, released him from further obligation on the 1985 loan. At the time of the Settlement Agreement, the 1985 loan was current, but Appellant was in default on certain other debts to the Bank in an amount in excess of $600,000.00. These debts were also resolved as part of the Settlement Agreement. According to the Settlement Agreement, Appellant was unable to pay either the principal or interest on any of his outstanding debts and entered into the Settlement Agreement to avoid litigation.

The 1985 loan was kept current by the remaining obligors until 1991, when it went into default. Bank sent a January 3, 1992 demand letter to all obligors on the loan, including Appellant. After Appellant reminded Bank of the Settlement Agreement, there was no further effort by the Bank to collect from Appellant.

On June 12, 1992, Bank sold the guaranteed portion of the 1985 loan to the SBA for $321,715.89. By letter dated June 24, 1993, the SBA made a similar demand on all obligors for payment of the balance of the loan.

Appellant advised the SBA that he had been released from liability on the 1985 loan pursuant to the Settlement Agreement. The record indicates Appellant did not make any payments on the 1985 loan after the Settlement Agreement, nor did the SBA further pursue Appellant.

In 1994, Appellant attempted to secure another government guaranteed loan. Appellant was informed that he could not secure another SBA or BIA (Bureau of Indian Affairs) loan due to the fact he had been an applicant on the 1985 loan on which the SBA incurred a loss in excess of $60,000.00. The basis for the SBA's action was a rule adopted August 27, 1993 that prohibited the SBA from assisting any loan applicant that was involved in a previous loan in which the SBA suffered a loss. 13 C.F.R. Part 120 (SBA Rule).

In his suit against Bank, Appellant alleged that the Bank failed to properly inform the SBA of his release from the loan, and failed to obtain a release of the SBA guaranty. He also claimed that the sale of the loan to the SBA caused him to lose time and money invested in the preparation of two gasoline super stations in addition to losing the opportunity the stations themselves would have brought. Appellant asserts that these actions constituted a breach of the Settlement Agreement as well as tortious conduct.

The ultimate issue in the present case rests upon a determination of whether Bank contractually agreed not to sell the 1985 loan to the SBA.[1] The language of the 1986 Settlement Agreement is the starting point in determining the parties' intent. "Where the language [of the contract] is clear and explicit, there is no need to resort to extrinsic evidence to ascertain its meaning." *Founders Bank and Trust Co. v. Upsher*, 830 P.2d 1355, 1361–62 (Okla.1992). Determining the construction of an unambiguous contract is a matter of law for the court. *First Nat'l Bank and Trust Co. of Vinita v. Kissee*, 859 P.2d 502, 506 (Okla.1993).

---

1. All of Appellant's claims have their origin in the alleged breach of the Settlement Agreement. Appellant does not argue that the Bank had any duties that did not arise from that contract. Our holding makes it unnecessary to address the contract/tort dichotomy.

The pertinent language of the Settlement Agreement is as follows:

> ... Chris Teape, shall be and hereby is by the terms of this Agreement released from any and all remaining liability of Chris Teape to Bank under the terms of all the promissory notes and personal guaranties set forth hereinabove.

The language is clear and the document viewed in its entirety can be considered complete. It contains a detailed discussion of the loans involved, how the collateral will be treated, and Appellant's objective to avoid litigation by settlement, despite default on a number of his loans. In examining the Settlement Agreement, this Court finds nothing to indicate that Bank agreed to forego its right to the SBA loan guarantee, or to protect Appellant from the effects of a later default of the 1985 loan. The Settlement Agreement simply does not address such a guaranty or Appellant's future creditworthiness in any manner.

In 1994, when the SBA declined to guarantee a loan for Appellant, the SBA indicated through correspondence that the nature of the default did not affect the SBA's decision. Even if a party were released from liability on the loan itself, the loss was still reflected on the SBA's books. The Settlement Agreement clearly indicates Appellant was no longer responsible for payment on the referenced loans. The Bank's obligation, as reflected in the Settlement Agreement, did not stretch beyond a duty to release Appellant from further liability on the included loans. We find there is a marked difference between an explicit release from a loan and an agreement to forego the substantial benefit of a government guaranty. The latter is not something that was specifically or implicitly addressed in the Settlement Agreement.

There is nothing in the record to indicate the Bank made any promises or representations to Appellant regarding the effect the Settlement Agreement would have on his future endeavors. At that time, neither party could have known of the 1993 SBA Rule. The Settlement Agreement does not include a guaranty that Appellant would not suffer any adverse consequences should the 1985 loan go into default. It does release Appellant from his obligations on the loan, and there is no evidence that anyone is now attempting to collect the loan from Appellant.[2]

The record indicates that there was an initial misunderstanding on the part of the SBA regarding Appellant's responsibility for the 1985 loan, as evidenced by the 1993 demand letter. Whether this mistake was the fault of the Bank or the SBA is unclear and immaterial. After being informed of the release, there is no evidence that the SBA continued to seek payment from Appellant.

According to Appellant, his real complaint is that he is ineligible to receive a federally guaranteed loan because of the SBA Rule prohibiting assistance to persons who were applicants on prior loans on which the federal agency shows a loss. 13 C.F.R. Part 120. The Settlement Agreement, which released Appellant's liability on the 1985 loan, could not erase Appellant's status as an applicant on that loan. Indeed, the evidence shows that even if the SBA had specifically consented to the release of Appellant from the 1985 loan, the same consequences would occur with respect to future applications for federally guaranteed loans.[3] Any claim concerning the misapplication of the SBA Rule is a matter for Appellant to address with the SBA directly.

We find summary judgment was properly granted in favor of Appellee, American National Bank of Shawnee, because the Settlement Agreement did not contain an obli-

---

2. Appellant offered the same super station loan package to the Bank, which declined to make the loan. Yet Appellant does not claim that the Bank's refusal to extend new credit to Appellant is a breach of the Settlement Agreement.

3. Appellant filed for bankruptcy protection shortly after the Settlement Agreement was executed in 1986. The SBA Rule makes it clear that even when the SBA releases an obligor, or the obligation is discharged in bankruptcy, the prohibition on future assistance still exists. Federal Register, Vol. 58, No. 165, August 27, 1993.

gation to relinquish the Bank's right to take advantage of the SBA guaranty. Appellant was merely released from further liability on the loan. For these reasons, we affirm the trial court's grant of summary judgment in favor of Appellee.

AFFIRMED.

HANSEN, P.J., and ADAMS, V.C.J., concur.