2010 OK 65

**JPMORGAN CHASE BANK, N.A., Plaintiff/Appellant,**

v.

**SPECIALTY RESTAURANTS, INC.; Paul Kreth; James Vallion; and the James Vallion Trust, Defendants/Appellants.**

No. 106,289.

Supreme Court of Oklahoma.

Sept. 21, 2010.

As Corrected Nov. 22, 2010.

Rehearing Denied Nov. 29, 2010.

---

26. See ¶ 4, *supra,* and discussion therein.

Joel W. Harmon, T.P. Howell, Day, Edwards, Propester & Christensen, P.C., Oklahoma City, OK, for Plaintiff/Appellant.

Russell L. Mullinix, Amy G. Piedmont, Armando J. Rosell, Mullinix, Ogden, Hall, Andrews & Ludlam, P.L.L.C., Oklahoma City, OK, for Defendants/Appellees, Specialty Restaurants Inc. and Paul Kreth.

Russell L. Mulinix, Mulinix, Ogden, Hall, Oklahoma City, OK, for Defendants/Appellees, James Vallion and the James Vallion Trust.

WATT, J.:

¶1 We granted certiorari to address a single issue: whether, after foreclosure, the guarantors[1] were entitled to credit on the

---

1. The term "guaranty" is statutorily defined as "a promise to answer for the debt, default or miscarriage of another person. Title 15 O.S. 2001 § 321 providing:

"A guaranty is a promise to answer for the debt, default or miscarriage of another person."

*Founders Bank & Trust Co. v. Upsher*, 1992 OK 35, ¶19, 830 P.2d 1355.

mortgagee's judgment for the fair and reasonable market value of the property[2] disposed of at sheriff's sale?[3] We determine that the guarantors effectively waived the right to a credit or setoff of the fair and reasonable market value of the property. Our determination is supported by the plain, clear, unmistakable, unambiguous, and unequivocal language of the respective guaranty agreements which is sufficient to waive the right of a fair market value setoff to the guarantors' debts.[4]

2. Title 12 O.S.2001 § 686 providing in pertinent part:

"In all actions to enforce a mortgage, deed of trust, or other lien or charge, a personal judgment or judgment or judgments shall be rendered for the amount or amounts due as well to the plaintiff as other parties to the action having liens upon the mortgaged premises by mortgage or otherwise ... Notwithstanding the above provisions no judgment shall be enforced for any residue of the debt remaining unsatisfied as prescribed by this act after the mortgaged property shall have been sold, except as herein provided. Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety (90) days after the date of the sale, the party to whom such residue shall be owing may make a motion in the action for leave to enter a deficiency judgment upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. Such notice shall be served personally or on in such other manner as the court may direct. Upon such motion the court, whether or not the respondent appears, shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date of sale or such nearest earlier date as there shall have been any market value thereof and shall make an order directing the entry of a deficiency judgment. Such deficiency judgment shall be for an amount equal to the sum of the amount owing by the party liable as determined by the judgment with interest, plus costs and disbursements of the action plus the amount owing on all prior liens and encumbrances with interest, less the market value as determined by the court or the sale price of the property whichever shall be the higher...."

We note that § 686 was amended by the Legislature effective November 1, 2010. The amendment is inapplicable to the cause presented. 2010 Okla. Sess. Law Serv., Ch. 202 (S.B. 2154).

3. Chase agrees that the guarantors are entitled to the $750,000.00 credit representing the price confirmed from the sheriff's sale. See, Plaintiff's Clarification of Relief Sought in its Motion for Deficiency Judgements, filed March 8, 2007,

## FACTUAL AND PROCEDURAL HISTORY

¶ 2 Early in 2000, Chase loaned the restaurant $1,750,000.00 to purchase real estate and equipment for a restaurant. The loan was secured by a mortgage and by two guaranty agreements. Initially, Kreth and Vallion entered identical guaranty agreements **waiving any and all rights given to guarantors at law or in equity other than actual payment and agreeing not to assert or make any claim of setoff.**[5]

found in Volume II of III of the Original Record at pp. 464–65 and providing in pertinent part:

... 1. In calculating the Deficiency Judgment, the primary debtor, Speciality Restaurants, Inc., it entitled to credit for the fair and reasonable market value of the mortgaged property, as determined by the Court; and
2. The guarantors, namely Paul Kreth, James Vallion and the James Vallion Trust, are entitled to credit for only the proceeds of the Sheriff's Sale of the foreclosed property.
In explanation, the Bank has asserted that the price received at the Sheriff's Sale for the mortgaged property namely $750,000.00, is equivalent to its fair and reasonable market value, so that the credit given to the primary debtor and the guarantors is the same. If the Court should determine, however, that the fair and reasonable market value is some higher figure, the Bank will contend that by reason of waivers in their guaranties, the guarantors are still entitled to credit only for the Sheriff's Sale proceeds...."

4. We are not presented here with specific surety language which limits the general language as was the Court of Civil Appeals in *First Enterprise Bank v. Be–Graphic, Inc.* 2006 OK CIV APP 141, 149 P.3d 1064. Opinions released for publication by order of the Court of Civil Appeals are persuasive only and lack precedential effect. Rule 1.200, Supreme Court Rules, 12 O.S.2001, Ch. 15, App. 1; 20 O.S.2001 §§ 30.5 and 30.14.

5. Commercial Guaranty, signed on February 15, 2000 by Paul Kreth, found in Vol. I of III, of the Original Record, at p. 71 and Commercial Guaranty, signed on February 15, 2000 by James Vallion, record p. 74. Both guaranty agreements providing in pertinent part:

"... Guarantor also waives any and all rights or defenses arising by reason of ... (d) any defenses given to guarantors at law or in equity other than actual payment and performance of the indebtedness, or (e) by any failure, neglect, or omission by Lender to perfect in any manner the collection of the indebtedness or the security given therefore, including the failure or omission to seek a deficiency judgment

¶ 3 Vallion transferred a number of assets to the James Vallion Trust including the restaurant property. Thereafter, **Chase required Vallion to execute a second guaranty agreement** [6] **waiving and agreeing not to assert any limitation defense and the benefits of any statutory provision limiting the trust's liability including "without limitation" the provisions of sections 334,** [7] **337,** [8] **338,** [9] **and 344** [10] **of title 15 along with any right to setoff under** *12 O.S.2001 § 686.* [11]

¶ 4 Upon default, Chase filed a foreclosure suit in 2005 receiving summary judgment in its favor. The judgment was affirmed and the property was sold at sheriff's sale in December of 2006 to Chase for $750,000.00. The sale was confirmed at a hearing on January 5, 2007. Chase filed a motion for deficiency judgment asking that the restaurant and the guarantors be given credit for the sheriff's sale price of $750,000.00. Later, Chase filed a "clarification" in the cause indicating that the mortgagor was entitled to

against Borrower, Guarantor, any other guarantor, or any person . . .
Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under the Guaranty for any claim of setoff, counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both. . . ."

6. Evidently, the trial court had some concerns as to whether there was consideration for the execution of the second agreement. See, Transcript of Proceedings, March 15, 2007, providing in pertinent part at p. 9:
"... THE COURT: I'm not going to make that finding either because there are two issues that worry me. And I read the guaranty—or the guarantor's agreement that was signed by Vallion in 2004 related back to a 2003 loan. It says there was consideration but I'm not sure what the consideration was because it was signed a year after the initial loan was made. . . ."
Nevertheless, it is clear that the trial court's refusal to enforce the guaranty agreement was not based on a finding of lack of consideration. See, Transcript of Proceedings, March 15, 2007, providing in pertinent part at pp. 12–13:
"... MR. HARMON: The Court enforced the guaranty agreements on the motion for summary judgment. That is the affect of that ruling.
Are you making a finding now that portions of the guaranty agreement, at least in our view, purport to waive rights under 686, that those alone didn't have adequate consideration for their enforceability?
THE COURT: No. What I'm saying is I don't think the guaranty agreements, in fact, the waiver went that far. . . .
And I'm not sure what the discussion was with the Vallion Trust to get him to sign that waiver that he signed on behalf of the Vallion Trust, that being Mr. Vallion a year after a note of 2003.
Something was going on in the course of dealing with these parties and that's why I'm saying I'm not going to enforce that. . . ."
Furthermore, no evidence was presented on the issue either demonstrating the existence of con-

sideration for the signing of the second guaranty or the lack thereof. Additionally, the guaranty agreement provides that it was extended to Vallion "at the instance and request of Borrower to induce Bank to extend or continue financial accommodations to Borrower." Any change in obligatory condition of an enforceable pre-existing debt which could be deemed of benefit to guarantor will support guaranty of payment thereof. See, *Yount v. Bank of Commerce,* 1935 OK 504, ¶ 0, 44 P.2d 874. Finally, we need not address an issue neither contained in the journal entry of judgment nor presented on certiorari. See, *Hedges v. Hedges,* 2002 OK 92, ¶ 17, 66 P.3d 364 [A trial judge's statement sin announcing an order do not constitute findings of fact and will not be considered incorporated or varying the terms of the journal entry of judgment.];

7. Title 15 O.S.2001 § 334 providing:
"The obligation of a guarantor must be neither larger in amount, nor in other respects more burdensome than that of the principal; and if, in its terms, it exceeds it, it is reducible in proportion to the principal obligation."

8. Title 15 O.S.2001 § 337 providing:
"A continuing guaranty may be revoked at any time by the guarantor, in respect to future transactions, unless there is a continuing consideration as to such transactions which he does not renounce."

9. Title 15 O.S.2001 § 338 providing:
"A guarantor is exonerated, except so far as he may be indemnified by the principal, if by any act of the creditor, without the consent of the guarantor, the original obligation of the principal is altered in any respect, or the remedies or rights of the creditor against the principal, in respect thereto, in any way are impaired or suspended."

10. Title 15 O.S.2001 § 344 providing:
"A guarantor is not exonerated by the discharge of his principal by operation of law, without the intervention or omission of the creditor."

11. Title 12 O.S.2001 § 686, see note 2, supra.

credit for the fair and reasonable value of the property as determined by the trial court. Nevertheless, the bank asserted the guarantors could only benefit from the $750,000.00 actually paid for the property at the sheriff's sale.[12] The argument was premised on the guarantors having waived all rights of setoff in their respective guaranty agreements.

¶5 On March 15, 2007, the trial court announced its judgment. It found the fair and reasonable value of the mortgaged property to be $1,500,000.00. The trial court determined that the guarantors were entitled to a credit on the judgment of the fair market value of the property, $1,500,000.00, rather than the sale price of $750,000.00. Chase appealed alleging that the determination of the fair market value of the property was too high and that the guarantors waived any rights of setoff based on a fair and reasonable market value determination. The Court of Civil Appeals affirmed on March 12, 2010. We granted certiorari on May 25, 2010 to consider the sole issue presented: whether, after foreclosure, the guarantors' obligation should be credited with the court-determined fair and reasonable market value of the property?

¶6 **The plain, clear, unmistakable, unambiguous, and unequivocal language of the respective guaranty agreements is sufficient to waive the right of a fair and reasonable market value setoff to the guarantors' debts.**

¶7 Chase argues that the guaranty agreements waived all rights of the guarantors to

setoffs for the adjudicated fair and reasonable market value of the property. Both the restaurant and Kreth assert that a credit of the judicially determined fair market value of the property is appropriate pursuant to *12 O.S.2001 § 686*.[13] Vallion insists that the failure of his after-executed guaranty agreement to specifically waive the provisions of *15 O.S.2001 § 341* [14] providing for a guarantor's obligation to be reduced to the same extent as that of the borrower mandates that he be allowed a credit of the judicially determined fair and reasonable market value of the property. It is agreed that the restaurant should receive credit for the reasonable fair market value of $1,500,000.00. Nevertheless, we disagree with the guarantors' contentions that they are entitled to the same relief.

### Construction of guaranty contracts.

██ ¶8 Before looking at the precise language of the guaranty contracts, it is helpful to review the rules of construction governing such agreements.[15] Generally, the promise to stand for the debt of another is purely contractual and collateral to that of the principal debtor.[16] Intent at execution controls the meaning of the written terms [17] and the extent of the obligation is defined by the promise given.[18] Contract language is accorded its plain and ordinary meaning absent a term intended to carry a specific technical meaning.[19]

██ ¶9 The parties' intent in executing a guaranty contract is gathered from the

---

12. See note 3, supra.

13. Title 12 O.S.2001 § 686, see note 2, supra.

14. Title 15 O.S.2001 § 341, see note 29, infra.

15. The statutory rules for ascertaining intent appear at 15 O.S.2001 §§ 151–157.

16. *Lum v. Lee Way Motor Freight, Inc.,* 1987 OK 112, ¶16, 757 P.2d 810; *Riverside Nat'l Bank v. Manolakis,* 1980 OK 72, fn. 4, 613 P.2d 438. The Court of Civil Appeals found the Kreth agreement could not be intended to encompass anything more than that of the restaurant's due to its definition of the term "indebtedness" as "any and all of [Debtor's] liabilities, obligations, debts, and indebtedness to [Bank]." The inter-

pretation is faulty in that it looks to the after occurring facts rather than to the amount of debt undertaken at the time of execution of the mortgage and guaranty agreements.

17. Title 15 O.S.2001 § 152; *Oxley v. General Atlantic Resources, Inc.,* see note 24, infra; *Founders Bank & Trust Co. v. Upsher,* see note 1, supra; *Mercury Inv. Co. v. F.W. Woolworth Co.,* 1985 OK 38, ¶9, 706 P.2d 523.

18. Title 15 O.S.2001 § 154; *Lum v. Lee Way Motor Freight, Inc.,* see note 16, supra; *Riverside Nat'l Bank v. Manolakis,* see note 16, supra.

19. Title 15 O.S.2001 § 154; *BP America, Inc. v. State Auto Property & Cas. Ins. Co.,* 2005 OK 65, ¶6, 148 P.3d 832.

entire instrument.[20] Extrinsic evidence need not be introduced when the language is clear and explicit.[21] If the contract is complete in itself and, viewed in its entirety unambiguous, its language is the only legitimate evidence of intent.[22] The courts decide, as a matter of law, whether a contract provision is ambiguous.[23] Absent illegality, the parties are free to bargain as they see fit, and this Court will neither make a new contract or rewrite existing terms.[24] Finally, under Oklahoma law, guaranty agreements are construed most strongly against the guarantor.[25]

### The Kreth guaranty agreement.

■ ¶ 10 The original guaranty agreements signed by Kreth and Vallion on February 15, 2000 provide in pertinent part:

"... GUARANTOR'S WAIVERS ... **Guarantor waives any and all rights or defenses arising by reason of ... (d) any defense given to guarantors at law or in equity other than actual payment** and performance of the indebtedness.... **Guarantor further waives and agrees not to assert or claim at any time any deductions to the amount guaranteed under this Guaranty for any claim of setoff,** counterclaim, counter demand, recoupment or similar right, whether such claim, demand or right may be asserted by the Borrower, the Guarantor, or both...." [26] [Emphasis supplied.]

¶ 11 Specialty and Kreth assert that the guaranty agreement's failure to contain specific references to the waiver of protections contained in the statutes governing guaranty agreements, i.e. 12 O.S.2001 § 686[27] and 15 O.S.2001 §§ 334[28] and 341,[29] entitles Kreth to a setoff in the amount of the judicially determined fair and reasonable value of the property. We disagree.

¶ 12 The guaranty agreement Kreth executed specifically provides that, as guarantor, **Kreth waived any and all[30] defenses at law or in equity other than actual payment.**

---

**20.** Title 15 O.S.2001 § 157; *Founders Bank & Trust Co. v. Upsher*, see note 1, supra.

**21.** *Lum v. Lee Way Motor Freight, Inc.*, see note 16, supra; *Rucker v. Republic Supply Co.*, see note 25, infra.

**22.** *Founders Bank & Trust Co. v. Upsher*, see note 1, supra; *Mercury Inv. Co. v. F.W. Woolworth Co.*, see note 17, supra.

**23.** *Oklahoma Oncology & Hematology v. U.S. Oncology, Inc.*, 2007 OK 12, ¶ 27, 160 P.3d 936; *Whitehorse v. Johnson*, 2007 OK 11, ¶ 14, 156 P.3d 41; *Pitco Prod. Co. v. Chaparral Energy, Inc.*, 2003 OK 5, ¶ 12, 63 P.3d 541.

**24.** *Oxley v. General Atlantic Resources, Inc.*, 1997 OK 46, ¶ 14, 936 P.2d 943; *Bonner v. Oklahoma Rock Corp.*, 1993 OK 131, ¶ 5, 863 P.2d 1176.

**25.** *First Nat'l Bank of Hominy v. Citizens & Southern Bank of Cobb County*, 651 F.2d 696 (10th Cir.1981); *First Nat'l Bank & Trust Co. of Vinita v. Kissee*, 1993 OK 96, ¶ 13, 859 P.2d 502; *Rucker v. Republic Supply Co.*, 1966 OK 118, ¶ 9, 415 P.2d 951.

**26.** Kreth/Vallion Commercial Guaranty Agreement, see note 5, supra.

**27.** Title 12 O.S.2001 § 686, see note 2, supra. Section 686 is called the anti-deficiency statute. In mortgage foreclosure actions, when a creditor fails to seek an order determining a deficiency on the judgment within 90 days after foreclosure sale, the mortgagor's liability may be considered to have terminated by fictional satisfaction of the mortgage debt. Mortgage debtors cannot contract away the statute's benefits and are thus the principal beneficiaries of the statute. Conversely, persons other than the mortgage debtor may effectively relinquish the right to set off the fair market value of mortgaged property. *Founders Bank & Trust Co. v. Upsher*, see note 1, supra; *Riverside Nat'l Bank v. Manolakis*, see note 16, supra. The statute addresses itself to the creditor/debtor relationship. It does not deal with the more complex, tripartite relationship of guarantor/debtor/creditor or with the rights under the guaranty agreement. The existence of § 686 does not automatically operate to exonerate the guarantor from liability on an obligation deemed "satisfied" by that section. *Bank of Oklahoma, N.A. v. Red Arrow Marina Sales & Serv.*, 2009 OK 77, ¶ 33, 224 P.3d 685; *Riverside Nat'l Bank v. Manolakis*, see note 16, supra.

**28.** Title 15 O.S.2001 § 334, see note 7, supra. This statutory provision limits the guarantor's obligation to that of the principal.

**29.** Title 15 O.S.2001 § 341 providing:

"The acceptance, by a creditor, of anything in partial satisfaction of an obligation, reduces the obligation of a guarantor thereof, in the same measure as that of a principal, but does not otherwise affect it."

**30.** See discussion of the term "any" and its breadth in ¶ 16, infra, and the accompanying footnotes.

The only "actual" payment here was the purchase price of $750,000.00. Further, Kreth agreed not to assert or claim, at any time, any deductions to the amount guaranteed under the agreement for any claim of setoff.

¶ 13 The plain, clear, unmistakable, unambiguous, and unequivocal language of the Kreth guaranty agreement waived "any and all" rights of any setoff to the guarantors' debts other than actual payment. That being the case, Kreth is not entitled to a reduction in his obligation to Chase in the amount of $1,500,000.00, the judicially determined fair and reasonable market value of the property.

### The Vallion guaranty agreement.

¶ 14 Vallion signed a second guaranty agreement after creating a trust and transferring his interest in the restaurant property into the same. Vallion signed the second guaranty contract on September 21, 2004. It provides in pertinent part:

> Guarantor waives and agrees not to assert: ... (b) the benefit of any statute of limitations affecting Guarantor's liability hereunder or the enforcement hereof; ... (e) the benefits of any statutory provision limiting the liability of a surety, including without limitation the provisions of Sections 334, 337, 338 and 344 of Title 15 of the Oklahoma Statutes; ... (g) the benefits of any statutory provision limiting the right of the Bank to any foreclosure or trustee's sale of any security for the indebtedness, including without limitation, any right to setoff under Section 686 of Title 12 of the Oklahoma Statutes...." [31] [Emphasis supplied.]

¶ 15 Vallion insists that the quoted language from the guaranty agreement is insufficient to waive his right to receive credit for the fair and reasonable market value of the real property. The contention is simply not credible.

¶ 16 The term "any" is all-embracing and means nothing less than "every" and "all." [32] Utilization of the word "including" along with the phrase "without limitation" denotes an intention of non-exclusivity.[33] The term "including" is neither limiting nor exclusive.[34]

¶ 17 The guaranty contract provides that it waives the benefits of "any" statutory provision limiting the liability of a surety, including "without limitation" several specific statutory references. It goes on to utilize the same language in relation to 12 O.S.2001 § 686, the precise provision relating to offsets for the fair and reasonable market value of the mortgaged property. It is difficult to contemplate how the Bank could have more effectively accomplished eviscerating the guarantor's right to a setoff for the fair market value of the property. Furthermore, a reasonable interpretation of the clear language of the agreement makes it apparent that the failure to specifically refer to 15 O.S.2001 § 341,[35] limiting the obligation of the guarantor to that of the principal, does not require application of the statutory provision to the agreement. Utilization of the phrase "including without limitation" in the agreement most certainly was intended to extend the exclusion to the noted statutory provision.

¶ 18 The Vallion guaranty agreement specifically waived the right to setoff contained in 12 O.S.2001 § 686.[36] Furthermore, the plain, clear, unmistakable, unambiguous, and unequivocal language of the guaranty waived

---

31. Vallion agreement, found in Volume I of III, of the Original Record at pp. 225–27.

32. *State ex rel. Porter v. Ferrell*, 1998 OK 41, ¶ 9, 959 P.2d 576. See also, *Nguyen v. United States*, 556 F.3d 1244 (11th Cir.2009); *United Bank, Inc. v. Stone Gate Homeowners Ass'n, Inc.*, 220 W.Va. 375, 647 S.E.2d 811 (2007).

33. *St. Paul Mercury Ins. Co. v. Lexington Ins. Co.*, 78 F.3d 202 (5th Cir.1996); *In re Blue Diamond Coal Co.*, 163 B.R. 798 (Bankr.E.D.Tenn.1994).

34. *Matter of Younger*, 165 B.R. 965 (S.D.Ga. 1994), *aff'd, Younger v. United States*, 51 F.3d 1051 (1995), *cert. denied*, 516 U.S. 912, 116 S.Ct. 297, 133 L.Ed.2d 204 (1995). See also, *P.C. Pfeiffer Co., Inc. v. Ford*, 444 U.S. 69, 100 S.Ct. 328, 62 L.Ed.2d 225 (1979); *People v. Perry*, 309 Ill.Dec. 330, 224 Ill.2d 312, 864 N.E.2d 196 (2007).

35. Title 15 O.S.2001 § 341, see note 29, supra.

36. Title 12 O.S.2001 § 686, see note 2, supra.

"any" and all "including without limitation" the statutory provisions limiting its liability. Vallion, like Kreth, is not entitled to a reduction in his obligation to Chase in the amount of $1,500,000.00, the judicially determined fair and reasonable market value of the property.

## CONCLUSION

¶ 19 A guarantor's obligation is contractual. Therefore, in each case, we focus on the precise terms of the guarantor's undertaking, the dimension or breadth of the promise made.[37] When parting with funds, the lender is free to extract from guarantors terms and conditions less favorable than those afforded by statute.[38] Guarantors are bound by the unambiguous terms of the contract although the result may be harsh.[39]

¶ 20 The Bank successfully negotiated terms in its favor. Doing so does not render the contract unenforceable for public policy reasons. We hold that the plain, clear, unmistakable, unambiguous, and unequivocal language of the Kreth and Vallion guaranty agreements is sufficient to waive the right to a fair and reasonable market value setoff of the guarantors' liability. The cause is affirmed as to its conclusion regarding the restaurant's entitlement to a credit for the fair and reasonable market value of the property against the deficiency judgment entered. The cause is reversed and remanded for an entry of judgment against the guarantors consistent with this opinion.

**CERTIORARI PREVIOUSLY GRANTED; COURT OF CIVIL APPEALS' OPINION VACATED; TRIAL COURT AFFIRMED IN PART, REVERSED IN PART; AND CAUSE REMANDED.**

EDMONDSON, C.J., TAYLOR, V.C.J., HARGRAVE, OPALA, WATT, WINCHESTER, JJ., concur.

37. *Riverside Nat'l Bank v. Manolakis,* see note 16, supra.

38. *Founders Bank & Trust Co. v. Upsher,* see note 1, supra.

COLBERT and REIF, JJ., dissent.

KAUGER, J., not participating.

39. *Bank of Oklahoma, N.A. v. Red Arrow Marina Sales & Serv.,* see note 27, supra; *Cook v. Oklahoma Bd. of Pub. Affairs,* 1987 OK 22, ¶ 15, 736 P.2d 140.