2012 OK CIV APP 68

**AVB BANK, Plaintiff/Appellee,**

v.

**Robert HANCOCK and Laura Hancock, Defendants/Appellants,**

and

**Design Mark Builders, Inc., an Oklahoma corporation; Occupants Of The Premises; and Dennis Semler, Tulsa County Treasurer, Defendants.**

**No. 109,922.**

Court of Civil Appeals of Oklahoma, Division No. 1.

June 8, 2012.

Gentner F. Drummond, Garry M. Gaskins, Drummond Law, PLLC, Tulsa, Oklahoma, for Plaintiff/Appellee.

Lawrence D. Taylor, Tulsa, Oklahoma, for Defendants/Appellants.

KENNETH L. BUETTNER, Presiding Judge.

¶ 1 Defendants/Appellants Robert and Laura Hancock appeal from summary judgment entered in favor of Plaintiff/Appellee AVB Bank in Bank's foreclosure action against the Hancocks and Defendant Design Mark Builders, Inc. The Hancocks were guarantors on a note and mortgage on which Design Mark defaulted. The undisputed material facts show Bank was entitled to judgment against the Hancocks as a matter of law and we affirm.

¶ 2 In its December 16, 2009 foreclosure petition, Bank alleged that Design Mark had defaulted on a note for $1,294,257.25, which was secured by a mortgage on property in Tulsa County. Bank alleged that the Hancocks had each individually signed guaranties of payment of the notes. Bank alleged the notes and mortgage had been deferred and extended multiple times, and that the full principal amount remained owing along with interest.

¶ 3 The Hancocks and Design Mark denied Bank's claims. The Hancocks denied the guaranties were their promise to pay the debt of another. They alleged that instead the guaranties were their promise to pay their own debt because they were the sole members and only partners in Design Mark, which they described as an "alter ego limited liability company that acted as a mere instrumentality for their personal building operations." The Hancocks asserted they were the primary obligors on the note and were

therefore entitled to the anti-deficiency protection of 12 O.S.2001 § 686.

¶ 4 Bank filed its second Motion for Summary Judgment April 8, 2011. Bank asserted 28 statements of undisputed facts.[1]

¶ 5 In their May 2, 2011 Objection, the Hancocks included a list of nine unresolved fact issues.[2] Bank filed a reply May 13, 2011.

¶ 6 Following a hearing held July 15, 2011, the trial court entered its Journal Entry of Judgment, in which it granted summary judgment to Bank, August 29, 2011. The court found the Hancocks were liable as guarantors and that they had waived their rights under the anti-deficiency statute. The trial court entered judgment against the Hancocks and Design Mark and ordered foreclosure of the mortgaged property.

¶ 7 The Hancocks appeal. Summary judgment proceedings are governed by Rule 13, Rules for District Courts, 12 O.S.2001, Ch. 2, App.1. Summary judgment is appropriate where the record establishes no substantial controversy of material fact and the prevailing party is entitled to judgment as a matter of law. *Brown v. Alliance Real Estate Group*, 1999 OK 7, 976 P.2d 1043, 1045. Summary judgment is not proper where reasonable minds could draw different infer-

---

**1.** Bank filed its first Motion for Summary Judgment February 23, 2010. The Hancocks filed their Objection to (Bank's) Motion for Summary Judgment March 23, 2010. They asserted there was a dispute of material fact as to whether they are "de facto additional principal obligors along with their alter ego corporation." The trial court denied Bank's first Motion for Summary Judgment April 23, 2010. Bank then filed a Motion to Reconsider, to which the Hancocks objected. The trial court denied the Motion to Reconsider.

In its second summary judgment motion, Bank averred there was no dispute that: 1) Design Mark, by its president Robert Hancock, delivered the note to Bank January 12, 2007, in which Design Mark promised to pay monthly interest installments and the principal balance by January 12, 2008; 2) as security for the note, Design Mark gave Bank a mortgage on property in Tulsa County, and Bank recorded the mortgage January 18, 2007; 3) Design Mark executed an extension of the note and a modification of the mortgage February 28, 2008, in which the maturity date was extended to July 12, 2008; 4) Design Mark again deferred or extended the note August 28, 2008 and March 26, 2009, extending the maturity date to May 26, 2009; 5) Design Mark again extended the note and modified the mortgage June 26, 2009; 6) Bank was the present owner of the note and mortgage; 7) the mortgage required the mortgagor to pay principal, interest, taxes, special assessments, and insurance premiums on the property; 8) the note and mortgage provided that upon default of any payment due, the entire amount outstanding would become due at once at the option of Bank; 9) Design Mark had defaulted and the amount due was $1,204,257.25 in principal plus $6,737.23 in interest through November 3, 2009 and continuing, Bank had demanded payment but Design Mark had failed to pay; 10) by defaulting, Design Mark had broken the condition of the note and the full amount of the note was due and payable with interest; 11) Bank had complied with all provisions of the mortgage; 12) Robert Hancock executed and delivered January 12, 2007 a commercial guaranty by which he guaranteed payment of the note to Bank; 13) in the guaranty, Hancock expressly waived his rights under any "one action" or "anti-deficiency" law; 14) Laura Hancock executed and delivered January 12, 2007 a commercial guaranty by which she guaranteed payment of the note to Bank; 15) in the guaranty, Hancock expressly waived her rights under any "one action" or "anti-deficiency" law; 16) Bank had made demand on the Hancocks for payment under the guaranties and the Hancocks had failed and refused to pay; 17) Design Mark was an active Oklahoma corporation in good standing; 18) the Hancocks incorporated Design Mark; 19) the Hancocks were the sole shareholders of Design Mark; 20) at the time Robert Hancock executed the note on behalf of Design Mark, it was financially solvent; 21) Design Mark had its own bank accounts separate from the Hancocks' accounts; 22) the Hancocks did not mingle personal funds with Design Mark funds; 23) Design Mark maintained its own separate books and records; 24) the shareholders of Design Mark had regular corporate meetings; 25) Design Mark had its own separate liability insurance policies; 26) the Hancocks received salaries from Design Mark; 27) Design Mark paid salaries to other employees; and 28) Design Mark issued W-2 forms for its employees, including the Hancocks.

**2.** They asserted the following fact questions remained to be tried: 1) were the Hancocks nothing more than the principal obligors under another name; 2) was Design Mark a legitimate entity or a shell for the Hancocks as individuals; 3) did Bank inquire about the financial standing of Design Mark or did Bank rely entirely on the Hancocks' financial statements; 4) was the real purpose of the loan agreement to subvert the anti-deficiency statute; 5) did Design Mark have substantial assets when the loan was made; 6) was Design Mark undercapitalized; 7) did Bank demand that additional collateral of the Hancocks be added to the collateral base; 8) did Bank seek liens against the Hancocks' personal assets; and 9) did Bank look exclusively to the Hancocks throughout the loan process.

ences or conclusions from the undisputed facts. *Id.* Further, we must review the evidence in the light most favorable to the party opposing summary judgment. *Vance v. Fed. Natl. Mortg. Assn.*, 1999 OK 73, 988 P.2d 1275.

¶ 8 The parties do not dispute the material facts that Design Mark defaulted on the note, the mortgaged property was subject to foreclosure, and the Hancocks had signed guaranties which included express waivers of their rights under the anti-deficiency statute. The Hancocks' sole argument below and on appeal is that they are not true guarantors because they are the sole members of Design Mark, so that the guaranties were "sham guaranties" and that Bank knew as much when the documents were executed. The Hancocks contend that as a result, they were the principal debtors on the note and mortgage and therefore the waivers of the anti-deficiency statute protection in the guaranties were not effective.[3]

¶ 9 A search of all states shows that only California courts have adopted the sham guaranty defense offered by the Hancocks.[4]

---

**3.** The principal debtor may not waive the protection of the anti-deficiency statute, but a guarantor is free to waive that protection. *Founders Bank and Trust Co. v. Upsher*, 1992 OK 35, 830 P.2d 1355. Oklahoma's anti-deficiency statute is 12 O.S.Supp.2010 § 686. It provides in part:

In actions to enforce a mortgage, ..., a personal judgment ... shall be rendered for the amount or amounts due as well to the plaintiff as other parties to the action having liens upon the mortgaged premises by mortgage or otherwise, with interest thereon, and for sale of the property charged and the application of the proceeds; or such application may be reserved for the future order of the court, and the court shall tax the costs, attorney's fees and expenses which may accrue in the action, and apportion the same among the parties according to their respective interests, to be collected on the order of sale or sales issued thereon;.... No real estate shall be sold for the payment of any money or the performance of any contract or agreement in writing, in security for which it may have been pledged or assigned, except in pursuance of a judgment of a court of competent jurisdiction ordering such sale. .... Notwithstanding the above provisions, no judgment shall be enforced for any residue of the debt remaining unsatisfied as prescribed by this act after the mortgaged property shall have been sold, except as herein provided. Simultaneously with the making of a motion for an order confirming the sale or in any event within ninety (90) days after the date of the sale, the party to whom such residue shall be owing may make a motion in the action for leave to enter a post-judgment deficiency order upon notice to the party against whom such judgment is sought or the attorney who shall have appeared for such party in such action. Such notice shall be served personally or in such other manner as the court may direct. Upon such motion the court, whether or not the respondent appears, shall determine, upon affidavit or otherwise as it shall direct, the fair and reasonable market value of the mortgaged premises as of the date of sale or such nearest earlier date as there shall have been any market value thereof and shall enter a post-judgment deficiency order. Such post-judgment deficiency order shall be for

an amount equal to the sum of the amount owing by the party liable as determined by the order with interest, plus costs and disbursements of the action plus the amount owing on all prior liens and encumbrances with interest, less the market value as determined by the court or the sale price of the property whichever shall be the higher. If no motion for a post-judgment deficiency order shall be made as herein prescribed the proceeds of the sale regardless of amount shall be deemed to be in full satisfaction of the mortgage debt and no right to recover any deficiency in any action or proceeding shall exist.

In any action pending at the time this act becomes effective or thereafter commenced, other than an action to foreclose a mortgage, to recover a judgment for any indebtedness secured by a mortgage on real property and which originated simultaneously with such mortgage and which is secured solely by such mortgage, against any person or corporation directly or indirectly or contingently liable therefor, any party against whom a money judgment is demanded, shall be entitled to set off the fair and reasonable market value of the mortgaged property less the amounts owing on prior liens and encumbrances. · Provided that nothing in this section shall limit or reduce any post-judgment deficiency order in favor of or in behalf of the state for any debts, obligations or taxes due the state, now or hereafter.

**4.** See *River Bank America v. Diller*, 38 Cal. App.4th 1400, 45 Cal.Rptr.2d 790 (1995), which explained the factual inquiry unique to each case:

The correct inquiry set out by the authority is whether the purported debtor is anything other than an instrumentality used by the individuals who guaranteed the debtor's obligation, and whether such instrumentality actually removed the individuals from their status and obligations as debtors.... Put another way, are the supposed guarantors nothing more than the principal obligors under another name? ... The legislative purpose of the antideficiency law may not be subverted by attempting to · separate the primary obligor's interests by

Broadly, the California courts addressing this issue have found that where a lender directs the primary obligor to create a shell entity to be the borrower and requires the individual borrower to be the guarantor, with the purpose of avoiding the protections of anti-deficiency legislation, then the guaranty is a "sham" and therefore any waiver of the anti-deficiency statutes in such guaranties will not be effective.

¶ 10 Oklahoma has a well-developed line of authority affirming a guarantor's right to waive most statutory protections, pursuant to the parties' freedom to contract as they wish. See *Founders Bank, supra; JPMorgan Chase Bank v. Specialty Restaurants, Inc.*, 2010 OK 65, 243 P.3d 8.[5] We are not prepared to adopt a rule from another state which would mark an abrupt departure from Oklahoma authority.

¶ 11 The Hancocks agree they signed the guaranties containing waivers of the anti-deficiency statute. As required by *JPMorgan*, we look to "the plain, clear, unmistak-

able, unambiguous, and unequivocal language of the" guaranties and find they included an express waiver of the anti-deficiency statute. We have noted above that such a waiver is permitted by Oklahoma law. The only disputes of fact alleged by the Hancocks relate to their claimed sham guaranty defense to their waiver of the anti-deficiency statute.[6] Because we reject their contention that such a defense exists under Oklahoma law, it is clear that the undisputed material facts in the record show that Bank was entitled to judgment as a matter of law and we AFFIRM.

JOPLIN, V.C.J., and HETHERINGTON, J. (sitting by designation), concur.

---

making a related entity the debtor while relegating the true principal obligors to the position of guarantors.... To determine whether the [purported guarantors] as individuals were primary obligors ... such that their guarantees must be considered ineffective, we ... look to the purpose and effect of the agreements to determine whether they are attempts to recover deficiencies in violation of [the statute].
38 Cal.App.4th at 1422–1423, 45 Cal.Rptr.2d 790 (citations and footnotes omitted).

**5.** In *JPMorgan*, the Oklahoma Supreme Court noted:

The parties' intent in executing a guaranty contract is gathered from the entire instrument. Extrinsic evidence need not be introduced when the language is clear and explicit.

If the contract is complete in itself and, viewed in its entirety unambiguous, its language is the only legitimate evidence of intent. The courts decide, as a matter of law, whether a contract provision is ambiguous. Absent illegality, the parties are free to bargain as they see fit, and this Court will neither make a new contract or rewrite existing terms. Finally, under Oklahoma law, guaranty agreements are construed most strongly against the guarantor.
*Id.* at ¶ 9, footnotes omitted.

**6.** Even under the sham guaranty defense recognized by California, one of the critical factors is that the lender required the borrower to be created so as to allow the true borrower to become a guarantor. In this case, Design Mark Builders, Inc. was created in 1996, and the loans/guaranties at issue are from 2007.